[No. A101916. First Dist., Div. Five. Sept. 10, 2004.]

JUNE F. SHORE et al., Plaintiffs and Respondents, v.
DEBORAH L. GURNETT, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, parts I.A., I.C. and II. of this opinion are not certified for publication.

**COUNSEL**

Valerian, Patterson, Field & Stratman, John D. Hourihan; Ropers, Majeski, Kohn & Bentley, Mark G. Bonino and Elisa Nadeau for Defendant and Appellant.

Gazzera, O'Grady & Stevens and Brian J. O'Grady for Plaintiffs and Respondents.

**OPINION**

**SIMONS, J.—** ■ The United States Supreme Court has relied on the federal due process clause to constitutionalize the law of punitive damages. (*State Farm Mut. Automobile Ins. Co. v. Campbell* (2003) 538 U.S. 408 [155 L.Ed.2d 585, 123 S.Ct. 1513] (*Campbell*); *BMW of North America, Inc. v. Gore* (1996) 517 U.S. 559 [134 L.Ed.2d 809, 116 S.Ct. 1589] (*Gore*).) *Campbell* and *Gore* not only prescribe procedural limitations on such awards but, substantively, forbid awards that are grossly excessive. Appellant Deborah L. Gurnett (Gurnett) argues for a significant expansion of the constitutional limits on punitive damages. She contends that repetitive penalties imposed on a defendant for a single source of conduct violate provisions of the federal Constitution, regardless of the size of the sanctions levied. Specifically, Gurnett argues that because she was convicted of vehicular manslaughter and sentenced to state prison, she may not be subject to punitive damages in a subsequent civil proceeding initiated by the decedent's family. We disagree and affirm.

BACKGROUND

The nature of the issues raised in this appeal requires only a limited discussion of the tragic facts underlying the competing claims of the parties. On January 30, 2001, Gurnett was driving in Alameda County while highly intoxicated. James Shore, married and the father of two sons, had the misfortune to be riding his bicycle in a designated lane in that vicinity. Gurnett struck and killed Shore. At the time of Shore's death, he was 44

years old and employed as a pilot (captain) for American Airlines. Gurnett subsequently pled no contest to gross vehicular manslaughter while intoxicated (Pen. Code, § 191.5, subd. (a)) and was sentenced to prison for the 10-year maximum term.

Prior to conviction and sentencing on the felony case, June F. Shore, Shore's wife, filed this wrongful death action on behalf of herself and as guardian ad litem for her two sons. Prior to trial, Gurnett stipulated that she had pled no contest to the gross vehicular manslaughter charge and that her negligence caused Shore's death. The jury awarded Shore's wife and children $7.5 million in compensatory damages and $35,000 in punitive damages. The court later entered judgment for the jury awards and granted plaintiffs $49,362.50 in attorney fees and $5,329.50 in costs.

Gurnett moved for a new trial, raising a host of new challenges to plaintiffs' verdict, including several federal constitutional arguments against the punitive damages award. She also argued that the punitive damages evidence inflamed the jury, causing it to award excessive compensatory damages. The trial court rejected these contentions and denied the new trial motion.

In this appeal, Gurnett renews the contentions raised in her new trial motion, and also claims the trial court abused its discretion in awarding attorney fees to plaintiffs under Code of Civil Procedure section 1021.4. In the published portion of this opinion we dispose of her constitutional challenges. In the unpublished portion, we reject the balance of her contentions and affirm.

DISCUSSION

I. *Punitive Damages Challenges*

 A. *Waiver and Invited Error*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

 B. *Constitutional Challenges*

Gurnett raises three separate constitutional challenges to the punitive damages award that we shall discuss in turn. Specifically, she claims that the award constituted a second punishment for a single course of conduct, violating her rights under the Fifth, Eighth and Fourteenth Amendments to

---

[*]See footnote, *ante*, page 166.

the United States Constitution. Constitutional challenges to a jury's award of punitive damages are reviewed de novo. (*Cooper Industries, Inc. v. Leatherman Tool Group, Inc.* (2001) 532 U.S. 424, 431 [149 L.Ed.2d 674, 121 S.Ct. 1678] (*Cooper*).)

(1) *Fifth Amendment (Double Jeopardy Clause)—The Double Jeopardy Claim*

█ The double jeopardy clause provides, in pertinent part, "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." (U.S. Const., 5th Amend.) The United States Supreme Court has held that the double jeopardy clause protects against three distinct abuses: "a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." (*United States v. Halper* (1989) 490 U.S. 435, 440 [104 L.Ed.2d 487, 109 S.Ct. 1892], overruled on other grounds by *Hudson v. United States* (1997) 522 U.S. 93, 101–102 [139 L.Ed.2d 450, 118 S.Ct. 488].) This clause is the only federal constitutional provision expressly prohibiting repetitive prosecutions or punishments, without regard to the magnitude of any sanction imposed. Despite that, it does not support appellant's argument.

█ Federal courts have consistently interpreted this provision to apply solely to multiple efforts *by the government* to prosecute or punish an individual. (*United States v. Halper, supra,* 490 U.S. at pp. 450–451.) "Nothing . . . precludes a private party from filing a civil suit seeking damages for conduct that previously was the subject of criminal prosecution and punishment. The protections of the [double jeopardy clause] are not triggered by litigation between private parties." (*Halper,* at p. 451, fn. omitted; accord, *Hudson v. United States, supra,* 522 U.S. at pp. 110–111 (conc. opn. of Stevens, J.); *Browning-Ferris Industries v. Kelco Disposal* (1989) 492 U.S. 257, 275, fn. 21 [106 L.Ed.2d 219, 109 S.Ct. 2909] (*Browning-Ferris*); see *Jones v. S.E.C.* (4th Cir. 1997) 115 F.3d 1173, 1183.)

█ The double jeopardy clause has been applied to noncriminal cases, but only those litigated by or on behalf of the government. Thus, civil actions brought by the government in its capacity as the government are subject to this constitutional restraint. In *Department of Revenue of Mont. v. Kurth Ranch* (1994) 511 U.S. 767 [128 L.Ed.2d 767, 114 S.Ct. 1937], following the arrest and conviction of certain members of the Kurth family for marijuana cultivation, the State of Montana sought to impose a tax on the convicted individuals for an amount equal to four times the market value of the marijuana. (*Id.* at pp. 771–772, 780, fn. 17.) Finding that the "tax" had lost its

character as such and become " 'a mere penalty with the characteristics of regulation and punishment' " (*id.* at p. 779), the court struck it down under the double jeopardy clause (*id.* at p. 784).[1]

■ When, however, a government agency sues in a nongovernmental capacity and seeks punitive damages, the double jeopardy clause is inapplicable, even if the defendant has previously been subject to a criminal prosecution for the identical conduct. (*U.S. v. Ely* (9th Cir. 1997) 142 F.3d 1113, 1121 [civil action seeking punitive damages by the Federal Deposit Insurance Corporation, acting in its nongovernmental capacity as a receiver of a failed institution, does not trigger double jeopardy clause so as to preclude criminal proceedings against the same defendants]; see also *U.S. v. Beszborn* (5th Cir. 1994) 21 F.3d 62, 67–68 [civil action for Racketeer Influenced and Corrupt Organizations Act violations, civil conspiracy, fraud, and related claims, pursued by Resolution Trust Corporation, acting in its nongovernmental capacity as receiver for insolvent financial institutions, which resulted in punitive damages award against business entities in which individual defendants held financial interests, did not trigger the double jeopardy clause and preclude the government from later pursuing criminal indictments against the individual defendants].)

■ Thus, we conclude that federal law has consistently isolated purely private litigation, like the lawsuit herein, from scrutiny under the double jeopardy clause, even when the plaintiff seeks and recovers punitive damages from a defendant previously punished criminally for the same course of conduct.

(2) *Eighth Amendment (Excessive Fines Clause)—The Double Punishment Claim*

■ The Eight Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."[2] Gurnett contends that the excessive fines clause precludes multiple punishments regardless of their size.[3] This argument fails for the same

---

[1] The United States Supreme Court has left unresolved the question of whether a qui tam action, in which a private party brings suit in the name of the government and shares in any award of damages, implicates the double jeopardy clause. (See *Browning-Ferris, supra,* 492 U.S. at p. 275, fn. 21.)

[2] The United States Supreme Court has held that the Fourteenth Amendment renders the Eighth Amendment's prohibition against excessive fines and cruel and unusual punishment "applicable to the States." (*Cooper, supra,* 532 U.S. at pp. 433–434.)

[3] Though we could treat this contention as waived because Gurnett has failed to cite any authority for it (*Ellenberger v. Espinosa* (1994) 30 Cal.App.4th 943, 948 [36 Cal.Rptr.2d 360]), we address the merits. We note, however, that in the rare United States Supreme Court decision addressing this constitutional provision, the discussion has focused on the proportionality of

reason Gurnett's double jeopardy argument failed: the excessive fines clause is simply unavailable to litigants resisting civil jury awards of punitive damages in lawsuits between private parties.

In *Browning-Ferris*, the parties were competitors in the waste disposal business in Burlington, Vermont. Kelco sued under section 2 of the Sherman Act and under state law for interfering with contractual relations, claiming Browning-Ferris had attempted to monopolize an aspect of the waste disposal market. A jury ruled in favor of Kelco on both claims and awarded approximately $50,000 in compensatory damages and $6 million in punitive damages. (*Browning-Ferris, supra,* 492 U.S. at pp. 260–262.) Browning-Ferris argued that the punitive damages award violated the excessive fines clause, but the United States Supreme Court disagreed. "Whatever the outer confines of the [excessive fines clause's] reach may be, we now decide only that it does not constrain an award of money damages in a civil suit when the government neither has prosecuted the action nor has any right to receive a share of the damages awarded." (*Browning-Ferris,* at pp. 263–264.)

Gurnett acknowledges this holding, but asserts that the Supreme Court's decision in *Cooper,* 12 years later, effectively overruled *Browning-Ferris* and applied the excessive fines clause to a civil case between private litigants. In *Cooper,* the United States Supreme Court addressed the appropriate standard of appellate review for a lower court's analysis of the constitutionality of a punitive damages award. (*Cooper, supra,* 532 U.S. at pp. 432–436.) *Cooper* never directly addressed the applicability of the excessive fines clause to a purely private lawsuit, the issue *Browning-Ferris* resolved. Moreover, appellant's contention that *Cooper* overruled *Browning-Ferris* sub silentio simply ignores that, in *Cooper,* the state was awarded 60 percent of the punitive damages. (*Cooper,* at p. 429.) We conclude *Browning-Ferris* continues to preclude reliance on the excessive fines clause to regulate punitive damages when the government is neither a party nor has a right to receive a share of the award.

(3) *Fourteenth Amendment (Due Process Clause)—The Substantive Due Process Claim*

■ In its substantive due process analysis of punitive damages, the high court has focused on the *level* of damages imposed. "Only when an award can fairly be categorized as 'grossly excessive' in relation to [a state's interest in punishment and deterrence] does it enter the zone of arbitrariness that violates the [due process clause] of the Fourteenth Amendment." (*Gore, supra,* 517

---

the penalty to the harm caused. (*Browning-Ferris, supra,* 492 U.S. at p. 275.) None of that court's cases, of which we are aware, have concluded that repetitive suits alone, without regard to the aggregate penalty imposed, violate the excessive fines clause.

U.S. at p. 568; accord, *Campbell, supra,* 538 U.S. at p. 416.) *Gore* set out three guidelines for determining whether a punitive damages award was grossly excessive: the degree of reprehensibility of the defendant's misconduct; the disparity between the harm suffered and the size of the punitive damages award; and the difference between this remedy and the civil penalties authorized or imposed in comparable cases. (*Gore,* at pp. 574–575.) In *Campbell,* while eschewing application of a simple mathematical formula, the court concluded that punitive damages awards should rarely exceed a single-digit multiple of the compensatory award. (*Campbell,* at pp. 424–425.)

On occasion, the United States Supreme Court has commented on the due process implications of multiple punishments, but only in the context of evaluating proportionality. (See *Campbell, supra,* 538 U.S. at p. 423.) That is, to the extent one plaintiff can rest its punitive damages claim on the harm caused to others by the defendant's misconduct, overlapping jury awards may result because future plaintiffs are not barred from suing by an earlier plaintiff's recovery. While any single verdict might satisfy *Gore* and *Campbell,* multiple verdicts, in the aggregate, may impose a significantly higher penalty than is warranted.

Gurnett relies principally on two sets of cases to support her proposed expansion of substantive due process. These cases are quite different from our own and fail to persuade. Further, implementing Gurnett's proposal would be a public policy error.

(a) *Single Plaintiff Awarded Multiple Penalties*

 California appellate decisions preclude recovery of two penalties by a single plaintiff against a single defendant in one case for the same misconduct. In *Marshall v. Brown* (1983) 141 Cal.App.3d 408 [190 Cal.Rptr. 392] (an employer-employee dispute), the plaintiff recovered a statutory treble damage award under Labor Code section 1054 and punitive damages for the same misconduct by the employer. (*Marshall,* at pp. 411–413.) In its review of the trial court's new trial order, the appellate court affirmed and ordered the plaintiff in the retrial to elect between the two penalties. (*Id.* at pp. 418–419.) In *Troensegaard v. Silvercrest Industries, Inc.* (1985) 175 Cal.App.3d 218 [220 Cal.Rptr. 712], plaintiff sued a mobilehome manufacturer for breach of warranty. In addition to compensatory damages, the jury awarded the plaintiff $55,000 in punitive damages (Civ. Code, § 3294), as well as a $90,000 "civil penalty" for willful failure to comply with a warranty (Civ. Code, § 1794). (*Troensegaard,* at pp. 220–221.) The appellate court struck the punitive damages award, concluding that the Legislature, in enacting Civil Code sections 1794 and 3294, had not intended such a double recovery. (*Troensegaard,* at pp. 227–228.)

Neither *Marshall* nor *Troensegaard* relied on substantive due process to preclude one plaintiff from recovering two penalties for one act of misconduct. Moreover, respondents in this case have not recovered more than one penalty for their loss. The state exacted its penalty and, following the conviction and sentencing of Gurnett, a jury awarded the Shores their own penalty. Requiring a single plaintiff in a civil action to elect penalties is far different than the determination Gurnett seeks barring respondents from recovering *any* penalty. Finally, it is noteworthy that, in contrast to the situation in *Marshall* and *Troensegaard*, the Legislature has expressly approved imposing these consecutive penalties on Gurnett. In response to the adoption by the electorate in 1982 of Proposition 8 (the Victims' Bill of Rights), the Legislature enacted Civil Code section 3294, subdivision (d),[4] which expressly authorizes the survivors of homicide victims to seek punitive damages in instances, like the present case, where the homicide resulted in the defendant's conviction of a felony. Prior to the Legislature's enactment of section 3294, subdivision (d), recovery of punitive damages in wrongful death actions was not permitted. (*Tarasoff v. Regents of University of California* (1976) 17 Cal.3d 425, 450 [131 Cal.Rptr. 14, 551 P.2d 334].)

### (b) *Mass Tort Litigation*

One United States District Court has concluded that, in mass tort litigation, the threat of multiple lawsuits by numerous plaintiffs seeking punitive damages may implicate due process concerns without regard to the amount of money involved.[5] (*In re No. Dist. of Cal. "Dalkon Shield" IUD Products* (N.D.Cal. 1981) 526 F.Supp. 887, 899 ["Certainly the principle of [res judicata], the notion that litigation must come to an end, that a party cannot sue or be sued repeatedly on the same cause of action, is part of the process that is due under our constitutional system."], orders vacated and cause remanded (9th Cir. 1982) 693 F.2d 847, 857, cert. den. *sub nom. A. H. Robins Co., Inc. v. Abed* (1983) 459 U.S. 1171 [74 L.Ed.2d 1015, 103 S.Ct. 817].) To alleviate these concerns, the district court approved a class action for punitive damages claims against the manufacturer, but the Ninth Circuit later vacated

---

[4] Civil Code section 3294, subdivision (d) provides: "Damages may be recovered pursuant to this section in an action pursuant to Chapter 4 (commencing with Section 377.10) of Title 3 of Part 2 of the Code of Civil Procedure based upon a death which resulted from a homicide for which the defendant has been convicted of a felony, whether or not the decedent died instantly or survived the fatal injury for some period of time. The procedures for joinder and consolidation contained in Section 377.62 of the Code of Civil Procedure shall apply to prevent multiple recoveries of punitive or exemplary damages based upon the same wrongful act."

[5] In enacting Civil Code section 3294, subdivision (d), the Legislature protected against convicted felons being held liable for multiple recoveries of punitive or exemplary damages in situations involving multiple plaintiffs by expressly mandating in the last sentence of subdivision (d) that "[t]he procedures for joinder and consolidation . . . shall apply to prevent multiple recoveries of punitive or exemplary damages based upon the same wrongful act."

this "remedy" on other grounds.[6] Mass tort litigation raises a significant threat of repetitive suits for punitive damages. Yet, Gurnett has failed to cite even one case from that area barring a plaintiff from seeking a lawful penalty simply because another plaintiff had already recovered a penalty from the same defendant for the same misconduct.

### (c) *Policy*

■ The mere absence of case authority supporting Gurnett's substantive due process argument would be a minor impediment if we thought the argument tenable, but we do not. Sound policy dictates rejection of a constitutional rule barring the filing of both a criminal complaint and a civil complaint for punitive damages for a single course of conduct that injures an individual and violates the criminal law. There is no doubt that the goal in each of these cases would be to impose a penalty on the wrongdoer. But, a constitutional prohibition against imposing both penalties would apply regardless of the order in which the cases occurred. Here, the criminal case was filed first and resolved first. There is nothing that mandates this primacy, however. To accept appellant's argument would lead ineluctably to the conclusion that a defendant who had been subjected to civil punitive damages would be immune from a subsequent criminal prosecution. (*Department of Revenue of Mont. v. Kurth Ranch, supra,* 511 U.S. at p. 804 (dis. opn. of Scalia, J.).) We decline Gurnett's invitation to create such a rule.[7]

### C. *Sufficiency of the Evidence for Punitive Damages**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### II. *Attorney Fees Challenge**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[6] See also *Juzwin v. Amtorg Trading Corp.* (D.N.J. 1989) 705 F.Supp. 1053, order vacated (D.N.J. 1989) 718 F.Supp. 1233. In *Juzwin,* the district court in an asbestos suit initially barred plaintiffs from recovering punitive damages against any defendant who could prove that "liability for punitive damages has already been imposed upon them for the conduct alleged to be the basis of a punitive damage claim in this action." (705 F.Supp. at pp. 1064–1065.) Six months later, the court vacated its order. (718 F.Supp. at p. 1236.)

[7] Gurnett's brief challenges the size of the compensatory damages award on the basis that evidence relevant only to punitive damages should not have been admitted, and that such evidence improperly affected the compensatory verdict. Having rejected Gurnett's claim that the punitive damages claim violated constitutional standards, her claim as to the compensatory damages also fails.

*See footnote, *ante,* page 166.

DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to plaintiffs. Following issuance of the remittitur, upon appropriate motion filed in the trial court, plaintiffs shall recover their reasonable attorney fees incurred for successfully defending against the appeal. (Code Civ. Proc., § 1021.4.)

Jones, P. J., and Gemello, J., concurred.