[No. B179503. Second Dist., Div. Three. Mar. 30, 2005.]

21ST CENTURY INSURANCE COMPANY, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY Respondent;
JAMES SCHWARTZ et al., Real Parties in Interest.

1354

## COUNSEL

Barger & Wolen, Kent R. Keller, Larry M. Golub, Michael A. S. Newman; Delmer, Armstrong & Roland, Michael Wade and John W. Myers IV for Petitioner.

Horvitz & Levy, Lisa Perrochet, Jeremy B. Rosen and Gina McCoy for Association of California Insurance Companies and American Insurance Association as Amici Curiae on behalf of Petitioner.

Reed Smith, James C. Martin, Lorenzo E. Gasparetti and Jayne E. Fleming for Truck Insurance Exchange, Farmers Insurance Exchange, Fire Insurance Exchange and Mid-Century Insurance as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Bill Lockyer, Attorney General, David S. Chaney, Assistant Attorney General, Randall P. Borcherding and Anne Michelle Burr, Deputy Attorneys General,

for John Garamendi, Insurance Commissioner of the State of California, as Amicus Curiae on behalf of Respondent.

Law Offices of Bernie Bernheim, Bernie Bernheim, Joshua H. Haffner; Parisi & Havens, David C. Parisi, Suzanne Havens Beckman; Law Offices of Steven L. Zelig and Steven L. Zelig for Real Parties in Interest.

## OPINION

**CROSKEY, J.**—In 2000, in response to charges of rampant mishandling of insurance claims arising out of the Northridge earthquake of 1994, the Legislature enacted Code of Civil Procedure section 340.9 (section 340.9), which revived certain previously time-barred insurance claims. In *20th Century Ins. Co. v. Superior Court* (2001) 90 Cal.App.4th 1247 [109 Cal.Rptr.2d 611], we concluded the statute revived not only contract claims, but also tort claims for bad faith. We also concluded the revival statute did not destroy vested rights in violation of the due process clause.

Plaintiffs and real parties in interest James and Jobeth Schwartz (plaintiffs) filed an action against 21st Century Insurance Company (21st Century) alleging claims for damages arising out of the Northridge earthquake. Their complaint alleged causes of action for breach of contract and bad faith. They sought punitive damages incident to their cause of action for bad faith. 21st Century moved for summary adjudication of the claim for punitive damages, on the basis that revival of a claim for punitive damages violates the ex post facto clause of the United States Constitution. The motion was denied. 21st Century sought review by petition for writ of mandate.

We issued an order to show cause. We hold that punitive damages are not sufficiently penal in intent or effect to trigger the protection of the ex post facto clause. We therefore deny the petition.

### FACTUAL AND PROCEDURAL BACKGROUND

The facts are not in dispute. Plaintiffs were insured by 21st Century, and pursued an insurance claim for damages arising out of the Northridge earthquake. The claim was denied. In 2000, the Legislature enacted section 340.9, reviving, for one year, previously time-barred civil actions against insurers arising out of the Northridge earthquake. Taking advantage of this statute, plaintiffs filed their complaint against 21st Century on December 31, 2001, alleging breach of contract and bad faith. The case was assigned to the Complex Litigation Department of the Los Angeles Superior Court.

The trial judge presiding over this case was also presiding over several similar Northridge earthquake insurance lawsuits. In one such suit, *Basurco v. 20th Century Insurance Company,* Los Angeles Superior Court, No. BC 212224, defendant 21st Century moved for summary adjudication of the claim for punitive damages, on the basis that the revival of such a claim violated the ex post facto clause of the United States Constitution. The trial court denied the motion in the *Basurco* action, concluding that the statutory revival of punitive damages was not an ex post facto law.

The parties in this action then agreed that the decision in *Basurco* would apply to this case, and stipulated to entry of an order denying summary adjudication of the issue. 21st Century sought writ relief.[1]

## CONTENTIONS OF THE PARTIES

The sole question presented is whether section 340.9 violates the federal Constitution's prohibition against ex post facto laws[2] to the extent it revives previously time-barred claims for punitive damages incident to causes of action for bad faith. 21st Century argues that it is unconstitutional, on the basis that revival of a criminal prosecution is an ex post facto violation, and punitive damages are akin to criminal penalties for purposes of ex post facto analysis. Alternatively, 21st Century argues we should avoid the constitutional issue by simply construing section 340.9 as not reviving liability for punitive damages. Plaintiffs argue that section 340.9 does not violate the prohibition against ex post facto laws, because that prohibition applies exclusively to penal legislation, while this statute is entirely civil in nature.

## DISCUSSION

### 1. *General Principles of Ex Post Facto Analysis*

Article I, section 10 of the United States Constitution prohibits states from enacting "any . . . ex post facto law." "[O]ur best knowledge of the original understanding of the *Ex Post Facto* Clause [is that] Legislatures may

---

[1] Amicus curiae briefs have been filed by: Truck Insurance Exchange, Farmers Insurance Exchange, Fire Insurance Exchange, and Mid-Century Insurance; Association of California Insurance Companies and American Insurance Association; and John Garamendi, Insurance Commissioner of the State of California.

[2] Amici curiae California Insurance Companies and American Insurance Association also argue section 340.9 violates the ex post facto clause of the California Constitution. (Cal. Const., art. I, § 9.) The language of the two clauses is the same. Interpreting the California constitutional provision, California courts look to United States Supreme Court authority interpreting the federal constitutional provision. (*People v. Wallace* (2004) 120 Cal.App.4th 867, 874 [16 Cal.Rptr.3d 152].) We therefore find no basis for a broader interpretation of the California Constitution.

not retroactively alter the definition of crimes or increase the punishment for criminal acts." (*Collins v. Youngblood* (1990) 497 U.S. 37, 43 [111 L.Ed.2d 30, 110 S.Ct. 2715].) A statute which revives an otherwise time-barred criminal prosecution violates the ex post facto clause. (*Stogner v. California* (2003) 539 U.S. 607, 609 [156 L.Ed.2d 544, 123 S.Ct. 2446].) The ex post facto clause "has been interpreted to pertain exclusively to penal statutes."[3] (*Kansas v. Hendricks* (1997) 521 U.S. 346, 370 [138 L.Ed.2d 501, 117 S.Ct. 2072].)

■ Many other constitutional provisions also apply only to penal laws, such as the prohibition against double jeopardy (e.g., *Hudson v. United States* (1997) 522 U.S. 93, 96 [139 L.Ed.2d 450, 118 S.Ct. 488]) and the Fifth and Sixth Amendment rights granted criminal defendants (e.g., *Kennedy v. Mendoza-Martinez* (1963) 372 U.S. 144, 163–164 [9 L.Ed.2d 644, 83 S.Ct. 554] (*Mendoza-Martinez*)). While it is well established that only penal laws are subject to the restrictions of the ex post facto clause, the prohibition against double jeopardy, and the procedural protections afforded criminal defendants, the United States Supreme Court has acknowledged the possibility that a statute which is *facially* civil may in fact be penal enough in *effect* to trigger these constitutional protections. (*Mendoza-Martinez, supra,* 372 U.S. at pp. 168–169.)

It is on this narrow ground that 21st Century bases its challenge to section 340.9. 21st Century argues that, to the extent that section 340.9 revives a claim for punitive damages incident to a bad faith cause of action, the statute is penal and therefore violates the ex post facto clause.

■ The United States Supreme Court has never directly addressed the issue of whether punitive damages are penal for the purposes of ex post facto analysis. It has, however, acknowledged that the retroactive application of punitive damages would "raise a serious constitutional question," without answering that question. (*Landgraf v. USI Film Products* (1994) 511 U.S. 244, 281 [128 L.Ed.2d 229, 114 S.Ct. 1483].) The *Landgraf* court was concerned with whether to interpret a statute, allowing for punitive damages, retroactively. In the absence of a clear congressional intent that the statute be applied retroactively, and the presence of a serious constitutional question if the statute were so interpreted, the Supreme Court chose to interpret the

---

[3] Retroactive civil laws are analyzed not under the ex post facto clause, but the due process clause, and the question is whether they deprive a party of vested rights. (*Stogner v. California, supra,* 539 U.S. at p. 632; *Chase Securities Corp. v. Donaldson* (1945) 325 U.S. 304, 315–316 [89 L.Ed. 1628, 65 S.Ct. 1137].) We have already upheld section 340.9 against a due process challenge. (*20th Century Ins. Co. v. Superior Court, supra,* 90 Cal.App.4th at pp. 1272–1274.)

statute prospectively only. (*Id.* at pp. 281, 293.) In contrast, section 340.9 is *necessarily* retroactive in application; its entire purpose is to revive causes of action otherwise time-barred. As such, we decline 21st Century's invitation to construe the statute to avoid the constitutional question. Section 340.9 is, by its terms, retroactive. We have already held that it applies to causes of action for bad faith, and punitive damages are incidental to such causes of action on proof of the requisite state of mind. (Civ. Code, § 3294 (section 3294).) The question of whether section 340.9 violates the ex post facto clause is squarely presented.

### 2. Controlling California Authority Has Held Punitive Damages Are Not Penal for Ex Post Facto Purposes

In *Peterson v. Superior Court* (1982) 31 Cal.3d 147 [181 Cal.Rptr. 784, 642 P.2d 1305], the California Supreme Court considered whether to give retroactive effect to a judicial decision holding punitive damages could be recovered from a drunk driver. The court applied the decision retroactively, rejecting the defendant's contention that the principles underlying the ex post facto clause prohibited retroactive application. (*Id.* at pp. 159–161.) The court concluded that, since the ex post facto prohibition applies to criminal, not civil, statutes, there was no ex post facto problem. (*Id.* at pp. 160–161.) The court stated, "The potential punitive damages award in this case is unquestionably a penalty civil in nature. There is no possibility of the stigma of a criminal conviction nor the potential loss of personal freedom. Thus, although the award of punitive damages is a type of penalty imposed to deter wrongful conduct, '[t]he authorization to award exemplary damages . . . does not convert a civil action into a criminal action insofar as it affects constitutional protections in criminal proceedings.' " (*Id.* at p. 161.)

21st Century contends *Peterson* is inapplicable because it considered the retroactivity of a judicial opinion while the ex post facto clause is concerned only with the retroactivity of statutes. In our view, this distinction is not relevant since whatever the factual context of the court's analysis, it is clear that the Supreme Court held that punitive damages are a civil penalty not subject to the ex post facto prohibition. That holding would appear to be binding on us.

Nonetheless, dictum in recent California Supreme Court authority suggests the possibility it might be willing to reconsider what it said in *Peterson*. In *Myers v. Philip Morris Companies, Inc.* (2002) 28 Cal.4th 828 [123 Cal.Rptr.2d 40, 50 P.3d 751], the court considered whether the repeal of a statutory immunity was to be given retroactive application so as to subject the

defendant to liability for conduct which, at the time it occurred, was immunized. In the absence of clear legislative intent to apply the repealing statute retroactively, the court gave it prospective application only. (*Id.* at pp. 840–845.) Additionally, the court, citing *Landgraf*, noted that the retroactive imposition of punitive damages "might violate the constitutional prohibition against ex post facto laws" and considered avoidance of the constitutional issue to be an additional reason to construe the statute prospectively only. (*Id.* at pp. 846–847.) *Myers* did not consider or overrule *Peterson*, and we therefore still follow that decision. Nonetheless, *Myers*'s citation of *Landgraf* suggests our Supreme Court might not consider *Peterson* to be wholly dispositive in light of intervening United States Supreme Court authority.[4] Thus, while we follow *Peterson*, we will proceed to consider the issue as though *Peterson* were not controlling.

### 3. *Section 3294 Is a Civil Statute and Is Not Penal in Nature*

#### a. *The Intent-effects Test*

■ The ex post facto clause prohibits only ex post facto penal legislation. In determining whether a facially civil statute is penal for these purposes, there is a "well established" framework for our inquiry. (*Smith v. Doe* (2003) 538 U.S. 84, 92 [155 L.Ed.2d 164, 123 S.Ct. 1140].) This framework is applicable not only to ex post facto analysis, but also to whether a statute is penal for purposes of double jeopardy (see *United States v. Ursery* (1996) 518 U.S. 267, 288 [135 L.Ed.2d 549, 116 S.Ct. 2135]) and Fifth and Sixth Amendment rights (see *United States. v. Ward* (1980) 448 U.S. 242, 248–249 [65 L.Ed.2d 742, 100 S.Ct. 2636]), among others (*Smith v. Doe, supra,* 538 U.S. at p. 97 [noting the test's origins are in Sixth and Eighth Amendment jurisprudence, as well as bill of attainder and ex post facto cases]).

■ "[T]he question whether a particular statutorily defined penalty is civil or criminal is a matter of statutory construction. [Citations.] Our inquiry in this regard has traditionally proceeded on two levels. First, we have set out to determine whether [the legislature], in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other. [Citation.] Second, where [the legislature] has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect as to negate that intention.

---

[4] For example, in a concurring and dissenting opinion, Justice O'Connor, joined by Justice Stevens, indicated, with minimal analysis, a belief that punitive damages are penal. (*Browning-Ferris Industries v. Kelco Disposal* (1989) 492 U.S. 257, 298 [106 L.Ed.2d 219, 109 S.Ct. 2909] (conc. and dis. opn. of O'Connor, J.).)

[Citation.] In regard to this latter inquiry, we have noted that 'only the clearest proof could suffice to establish the unconstitutionality of a statute on such a ground.' [Citations.]" (*United States v. Ward, supra,* 448 U.S. at pp. 248–249; see also *Kansas v. Hendricks, supra,* 521 U.S. at p. 361.)

██ The language used by the Supreme Court in describing the intent-effects test is, by necessity, somewhat imprecise. For example, *Smith* describes the "intent" portion of the test by saying, "If the intention of the legislature was to *impose punishment*," the statute is to be considered penal for constitutional purposes. (*Smith v. Doe, supra,* 538 U.S. at p. 92, italics added.) Yet the Supreme Court has "long recognized that the Double Jeopardy Clause does not prohibit the imposition of all additional sanctions that could, ' "in common parlance," ' be described as punishment. [Citations.] The Clause protects only against the imposition of multiple *criminal* punishments for the same offense." (*Hudson v. United States, supra,* 522 U.S. at pp. 98–99.) As made clear in *Ward,* the "intent" inquiry is whether the statute was intended to establish a civil penalty or a criminal one. (*United States v. Ward, supra,* 448 U.S. at p. 248.) Similarly, while the Supreme Court has sometimes used the shorthand phrase of determining whether a facially civil statute "constitute[s] punishment," (*United States v. Ursery, supra,* 518 U.S. at 287), the court has recognized that the true inquiry is whether the statute is "so punitive in form and effect as to render [it] criminal." (*Id.* at p. 290.)[5]

Any suggestion, therefore, that punitive damages must fail the intent-effects test simply because they are "punitive," is an oversimplification. We must determine whether they are so punitive in form and effect as be considered criminal for constitutional purposes.

### b. *The Legislative Intent Was That the Statute Be Civil*

██ The first step of the inquiry is to determine whether the Legislature intended to establish civil proceedings. In considering the Legislature's intent, we are to give "considerable deference" to the stated intent of the Legislature. (*Smith v. Doe, supra,* 538 U.S. at p. 93.) We should also consider the procedural mechanisms established by the statute for enforcing the alleged penalty. (*United States v. Ursery, supra,* 518 U.S. at pp. 288–289.) We may also consider the manner of the statute's codification. (*Smith v. Doe, supra,* 538 U.S. at p. 94.)

---

[5] Similarly, "penal" and "criminal" appear to be used interchangeably. *Mendoza-Martinez* was concerned with the ultimate determination of whether a statute was "penal" (*Mendoza-Martinez, supra,* 372 U.S. at p. 164), while a later case described *Mendoza-Martinez* as providing assistance in "distinguishing criminal from civil statutes." (*Kansas v. Hendricks, supra,* 521 U.S. at p. 362.)

21st Century does not contend section 340.9 *as a whole* violates the ex post facto clause; its challenge is limited to that portion of section 340.9 which revives claims for punitive damages incident to bad faith causes of action. Putting it another way, 21st Century seeks a determination of the criminal or civil nature of punitive damages under section 3294 *in general.*

■ California statutory provisions providing for the recovery of punitive damages were intended to establish civil proceedings. Punitive damages are provided for in the Civil Code, not the Penal Code. They are enforced by civil actions. We can conceive of no stronger indication that a statute was intended to establish civil proceedings than that it, in fact, established civil proceedings.

■ Section 3294, allowing civil tort plaintiffs to recover punitive damages when certain findings have been made, intended to establish civil, not criminal, proceedings.

### c. *The Relevant Factors to Be Considered*

■ Once the legislative intent has been determined to be civil, we then consider whether the challenged statute is so punitive in purpose or effect as to outweigh the Legislature's intent. Only the "clearest proof" will suffice to override the Legislature's stated intent and render a nominally civil statute penal for ex post facto purposes. (*Smith v. Doe, supra,* 538 U.S. at p. 92.)

■ We consider the seven factors originally set forth in *Mendoza-Martinez, supra,* 372 U.S. at page 168. The factors are " 'neither exhaustive nor dispositive' " but " 'useful guideposts.' " (*Smith v. Doe, supra,* 538 U.S. at p. 97.) They are: "[1] [w]hether the sanction involves an affirmative disability or restraint, [2] whether it has historically been regarded as a punishment, [3] whether it comes into play only on a finding of scienter, [4] whether its operation will promote the traditional aims of punishment-retribution and deterrence, [5] whether the behavior to which it applies is already a crime, [6] whether an alternative purpose to which it may rationally be connected is assignable for it, and [7] whether it appears excessive in relation to the alternative purpose assigned." (*Mendoza-Martinez, supra,* 372 U.S. at pp. 168–169, fns. omitted.)

To this nonexhaustive list of factors, we add an eighth factor: whether the sanction is imposed by means of government action. We believe the addition

of this factor is mandated by case law. The 14 cases on which *Mendoza-Martinez* relied in compiling its list of factors all involved government action;[6] thus, the issue of whether the absence of government enforcement was significant was not before the *Mendoza-Martinez* court. However, when the Supreme Court has considered statutes implicating private litigation, it has been quick to note that the absence of government action prevents the statute from being held "criminal" for constitutional purposes.[7] "The protections of the Double Jeopardy Clause are not triggered by litigation

---

[6] *Flemming v. Nestor* (1960) 363 U.S. 603, 617 [4 L.Ed.2d 1435, 80 S.Ct. 1367] (concluding statute terminating Social Security benefits for deportees was not penal because it did not impose an affirmative disability or restraint, was not historically considered punishment, and was rationally related to a nonpunitive purpose); *Trop v. Dulles* (1958) 356 U.S. 86, 96–97 [2 L.Ed.2d 630, 78 S.Ct. 590] (concluding statute revoking citizenship for anyone dishonorably discharged from the military for wartime desertion was penal because the purpose of the sanction was to punish); *Rex Trailer Co. v. United States* (1956) 350 U.S. 148, 150–152 [100 L.Ed. 149, 76 S.Ct. 219] (concluding statute allowing government to obtain a civil penalty for violation of the Surplus Property Act was not penal because it was not excessive in relation to its nonpunitive purpose); *United States v. Lovett* (1946) 328 U.S. 303, 316–317 [90 L.Ed. 1252, 66 S.Ct. 1073] (concluding statute prohibiting three specified individuals from being paid for government service was penal because it imposed a disability historically regarded as punishment and was intended to punish); *United States v. Constantine* (1935) 296 U.S. 287, 293–295 [80 L.Ed. 233, 56 S.Ct. 223] (concluding statute imposing penalty tax on dealers in illegal alcohol was penal because it was imposed on the basis of criminal acts, and was excessive in relation to any nonpunitive purpose); *United Sates v. La Franca* (1931) 282 U.S. 568, 572–575 [75 L.Ed. 551, 51 S.Ct. 278] (concluding a similar statute was penal because it was imposed on the basis of criminal acts, with the intent of punishment); *Lipke v. Lederer* (1922) 259 U.S. 557, 561–562 [66 L.Ed. 1061, 42 S.Ct. 549] (same); *Child Labor Tax Case* (1922) 259 U.S. 20, 36–38 [66 L.Ed. 817, 42 S.Ct. 449] (concluding statute imposing a flat tax on an employer's profits if child labor was used was penal because it was imposed only on a finding of scienter, was excessive in relation to any legitimate tax purpose, and was intended to prohibit conduct); *Helwig v. United States* (1903) 188 U.S. 605, 610–619 [47 L.Ed. 614, 23 S.Ct. 427] (concluding statute imposing penalty tax on undervalued imports was penal because it was imposed based on conduct of the importer, was excessive in relation to any legitimate tax purpose, and had been regarded as a penalty); *Wong Wing v. United States* (1896) 163 U.S. 228, 234–238 [41 L.Ed. 140, 16 S.Ct. 977] (concluding imprisonment at hard labor was an "infamous" punishment because it imposed a restraint which had historically been regarded as such); *Mackin v. United States* (1886) 117 U.S. 348, 352–353 [29 L.Ed. 909, 6 S.Ct. 777] (concluding imprisonment was an "infamous" punishment as it was historically regarded as such); *Ex parte Wilson* (1885) 114 U.S. 417, 426–429 [29 L.Ed. 89, 5 S.Ct. 935] (concluding imprisonment at hard labor was an "infamous" punishment as it was historically regarded as such); *Ex parte Garland* (1866) 71 U.S. 333, 377 [18 L.Ed. 366] (concluding statute requiring an oath of no former loyalty to Confederacy in order to practice law was penal because it imposed an affirmative disability or restraint based on past conduct); *Cummings v. The State of Missouri* (1866) 71 U.S. 277, 320–322 [18 L.Ed. 356] (concluding statute requiring an oath of no former loyalty to Confederacy in order to be a priest was penal because it imposed an affirmative disability or restraint, which had historically been regarded as punishment, based on past conduct).

[7] Moreover, the parties have not directed us to, nor has independent research disclosed, any Supreme Court opinion in which a statute that did not implicate government action was found to be penal in effect.

between private parties." (*United States v. Halper* (1989) 490 U.S. 435, 451 [104 L.Ed.2d 487, 109 S.Ct. 1892], abrogated on another ground by *Hudson v. United States, supra,* 522 U.S. at p. 96; cf. *Browning-Ferris Industries v. Kelco Disposal* (1989) 492 U.S. 257, 264 [106 L.Ed.2d 219, 109 S.Ct. 2909] [holding Eighth Amendment prohibition against excessive fines does not apply to punitive damages as that clause does not "constrain an award of money damages in a civil suit when the government neither has prosecuted the action nor has any right to receive a share of the damages awarded"].)

 As the "effects" portion of the intent-effects test is geared toward determining whether a facially civil statute is so punitive in effect that it is to be considered criminal, and government action is a hallmark of criminal prosecution, we conclude the absence of government action is a relevant factor to be considered in the "effects" inquiry.

> d. *Section 3294 Is Not So Punitive in Form or Effect As to Be Considered Penal for Purposes of the Ex Post Facto Clause*

We consider section 3294 with respect to each of the factors discussed above. First, we inquire whether the sanction of punitive damages involves an affirmative disability or restraint. The paradigmatic restraint is imprisonment. (*Smith v. Doe, supra,* 538 U.S. at p. 100.) Occupational debarment is not an affirmative disability or restraint. (*Ibid.*; *Hudson v. United States, supra,* 522 U.S. at p. 104.) The same is true of civil monetary penalties. (*Hudson v. United States, supra,* 522 U.S. at p. 104; *United States v. Ward, supra,* 448 U.S. at pp. 249–250.) As punitive damages payable to a private party are much more akin to civil monetary penalties than to imprisonment, we conclude that section 3294 does not impose an affirmative disability or restraint.

Second, we ask whether the sanction of punitive damages historically has been regarded as punishment. We are not here asking whether punitive damages have historically had the purpose of punishing a defendant; that inquiry is addressed in the fourth factor, discussed below. Instead, we are asking whether punitive damages have historically been regarded as punishment in a criminal or penal sense. (See *People v. Castellanos* (1999) 21 Cal.4th 785, 798 [88 Cal.Rptr.2d 346, 982 P.2d 211], [the lead opinion's analysis of this "historical" factor involved an acknowledgement that every other jurisdiction to address the issue found the challenged sanction to be regulatory and not punitive for constitutional purposes].) While it is true that punitive damages are imposed in order to punish defendants, they have not been considered punishment in a criminal or penal sense. "Although [punitive damage] awards serve the same purposes as criminal penalties, defendants subjected to punitive damages in civil cases have not been

accorded the protections applicable in a criminal proceeding." (*State Farm Mut. Automobile Ins. Co. v. Campbell* (2003) 538 U.S. 408, 417 [155 L.Ed.2d 585, 123 S.Ct. 1513].) Punitive damages have not been held to trigger the protection against double jeopardy (*Shore v. Gurnett* (2004) 122 Cal.App.4th 166, 171–172 [18 Cal.Rptr.3d 583]; *Hansen v. Johns-Manville Products* (5th Cir. 1984) 734 F.2d 1036, 1042) nor have they been held subject to excessive fines analysis (*Browning-Ferris Industries v. Kelco Disposal, Inc., supra,* 492 U.S. at pp. 259–260). Section 3294, therefore, does not impose a sanction historically regarded as punishment.

■ Third, does the sanction come into play only on a finding of scienter? Punitive damages can be recovered only upon proof of oppression, fraud, or malice. (Civ. Code, § 3294, subd. (a).) As such, the imposition of punitive damages occurs only on a finding of scienter.

Fourth, does the sanction promote the traditional aims of punishment—retribution and deterrence? Punitive damages do promote retribution and deterrence. (Civ. Code, § 3294, subd. (a); *State Farm Mut. Automobile Ins. Co. v. Campbell, supra,* 538 U.S. at p. 416.) It must be said, therefore, that punitive damages do promote the traditional aims of punishment.

■ Fifth, is the behavior to which the sanction applies already a crime? While criminal acts may subject a person to liability for punitive damages, there is no general requirement that section 3294 applies only to criminal acts. When the statute does not make criminal conduct a prerequisite for the application of the sanction, "[a]n absence of the necessary criminal responsibility suggests that the State is not seeking retribution for a past misdeed." (*Kansas v. Hendricks, supra,* 521 U.S. at p. 362.) This factor therefore weighs against considering punitive damages penal.

■ Sixth and seventh, we consider whether an alternative purpose to which it may rationally be connected is assignable to the sanction, and whether the sanction is excessive when compared to that purpose. Section 3294 allows the recovery of punitive damages "for the sake of example and by way of punishing the defendant." There is no alternative purpose assigned to punitive damages in California.[8]

---

[8] Were we focusing simply on section 340.9, rather than section 3294, our conclusion would be different. That statute was intended to bring necessary relief to earthquake victims who were secondarily victimized by claims mishandling, lowball repair estimates by claims adjusters and unfortunate but reasonable delays in damage discovery. (*20th Century Ins. Co. v. Superior Court, supra,* 90 Cal.App.4th at pp. 1267–1268 & fn. 21.) The main purpose of section 340.9 was compensation, not punishment. Although the statute's revival of all causes of action, including those for bad faith, necessarily encompassed the revival of claims for punitive damages, it is clear that the statute was tailored to restore to earthquake victims any lost civil causes of action, not to punish insurers.

■ Finally, we consider our eighth factor, whether the statute is enforced by government action or private litigation. Punitive damages are not a remedy enforceable only by the government. Instead, they are enforced in private litigation brought by any plaintiff.[9] This factor, therefore, suggests the statute is not penal.[10]

In sum, punitive damages are imposed only on a finding of scienter, and they serve the goals of punishment and no others. In contrast, they: (1) do not impose an affirmative restraint or disability; (2) are not historically regarded as penal; (3) do not apply to behavior which is already a crime; and (4) are only imposed in private litigation in which the government is not a necessary party. As only the clearest proof can override the Legislature's express designation of such damages as civil, we conclude that this balance of the factors is clearly insufficient.

■ As we conclude that the imposition of punitive damages is not a penal sanction, their revival under section 340.9 does not violate the ex post facto clause.

### 4. Whether a Civil Revival Statute Can Violate the Ex Post Facto Clause Is an Open Question

In *Stogner v. California, supra,* 539 U.S. at page 609, the Supreme Court held that a statute reviving an otherwise time-barred *criminal* prosecution violated the ex post facto clause. The court's opinion was expressly not directed toward *civil* revival statutes. (*Id.* at p. 631.) As we have concluded punitive damages are not penal in effect for the purpose of ex post facto analysis, we need not address the extent to which *Stogner* may extend to civil revival statutes which implicate civil sanctions that are penal in effect.

---

[9] Punitive damages may be obtained by a public entity bringing a tort action, just as they may be obtained by any other plaintiff. (*City of Glendale v. Superior Court* (2002) 95 Cal.App.4th 1266, 1268–1271 [116 Cal.Rptr.2d 16]; *City of Sanger v. Superior Court* (1992) 8 Cal.App.4th 444, 446–450 [10 Cal.Rptr.2d 436]; contra *City of Los Angeles v. Shpegel-Dimsey, Inc.* (1988) 198 Cal.App.3d 1009, 1023–1026 [244 Cal.Rptr. 507].) That a public entity may obtain a remedy available to any plaintiff wronged by a tortfeasor does not render the pursuit of that remedy government action. (See *Shore v. Gurnett, supra,* 122 Cal.App.4th at p. 172 [when a government agency sues in a nongovernmental capacity and seeks punitive damages, the double jeopardy clause is not implicated].)

[10] Newly enacted Civil Code section 3294.5 provides that 75% of any award of punitive damages is to be allocated to the state. The section is applicable only to actions filed after its effective date of August 16, 2004. It is therefore inapplicable to this matter as any case brought under section 340.9's revivor provisions must have been filed no later than December 31, 2001. We thus have no reason to consider or discuss what effect, if any, the state's interest in sharing in a civil plaintiff's recovery of punitive damages may have on this issue in future cases.

## *DISPOSITION*

The order to show cause is discharged and the petition is denied. Real parties in interest James and Jobeth Schwartz are to recover their costs in this proceeding.

Klein, P. J., and Kitching, J., concurred.

Petitioner's petition for review by the Supreme Court was denied June 22, 2005. Werdegar, J., was of the opinion that the petition should be granted.