[No. C042641. Third Dist. Sept. 30, 2003.]

CALIFORNIA INSURANCE GUARANTEE ASSOCIATION, Petitioner, v. WORKERS' COMPENSATION APPEALS BOARD and SCOTT MANGUM, Respondents.

**COUNSEL**

Rahn, Holbrook & Murphy, Cris M. Holbrook; Guilford Steiner Sarvas & Carbonara and Richard E. Guilford for Petitioner.

Jay-Allen Eisen Law Corporation, Jay-Allen Eisen; Law Offices of Thomas L. Plumb and Thomas L. Plumb for Respondent Scott Mangum.

No appearance for Respondent Workers' Compensation Appeals Board.

**OPINION**

**ROBIE, J.**—When a claimant seeks workers' compensation benefits from the California Insurance Guarantee Association (CIGA) for a claim arising out of a car accident, is CIGA entitled to a credit for underinsured motorist benefits the claimant received for the same accident? Yes.

Scott Mangum, the claimant in this workers' compensation case, was injured in a car accident. After collecting $85,000 in underinsured motorist benefits from his automobile insurance carrier, Mangum sought workers'

compensation benefits for the accident. While his claim was pending, the workers' compensation carrier for Mangum's employer became insolvent, and CIGA stepped in to cover the obligations of the insolvent carrier. The Workers' Compensation Appeals Board (WCAB) refused to give CIGA an $85,000 credit for the underinsured motorist benefits Mangum had received because it found "no statutory provision" for such a credit.

We conclude the statutes governing CIGA *do* allow CIGA to claim a credit for the underinsured motorist benefits Mangum received for the accident. Accordingly, we will annul the WCAB's decision and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

In July 1994, while returning to the office after running an errand for his employer, Scott Mangum injured his spine in a car accident. At the time of the injury, his employer's workers' compensation carrier was Superior National Insurance Company.

Sometime before April 1995, Mangum settled with the other driver's automobile insurance carrier for the policy limit of $15,000. In August 1995, Mangum received an additional $85,000 from his own automobile insurance carrier, which represented payment of Mangum's underinsured motorist coverage limit of $100,000 less the $15,000 recovered from the other driver's insurance.

It was not until 1997 that Mangum learned his injury was industrially related and filed a workers' compensation claim. Mangum originally believed the accident was not covered by workers' compensation because, after completing the errand for his employer, he had gone to the bank and stopped for lunch before returning to the office.

In August 2000, a workers' compensation administrative law judge (WCJ) found Mangum had suffered a compensable injury to his spine. On reconsideration, the WCAB upheld that finding.

While the petition for reconsideration was pending, a court found Superior National was insolvent and ordered the carrier liquidated. This order triggered CIGA's involvement. (See Ins. Code, §§ 1063.1–1063.2; *American Nat. Ins. Co. v. Low* (2000) 84 Cal.App.4th 914, 920–921 [101 Cal.Rptr.2d 288].) "CIGA's general purpose is to pay the obligations of an insolvent insurer." (*R. J. Reynolds Co. v. California Ins. Guarantee Assn.* (1991) 235 Cal.App.3d 595, 600 [1 Cal.Rptr.2d 405].)

CIGA was subsequently joined as a party defendant in the workers' compensation proceeding. Based on Mangum's receipt of the $85,000 from his automobile insurer, CIGA petitioned the WCJ for a credit pursuant to subdivision (c)(1) of Insurance Code section 1063.2 (section 1063.2(c)(1)). That section provides in relevant part: "If damages against uninsured motorists are recoverable by the claimant from his or her own insurer, the applicable limits of the uninsured motorists coverage shall be a credit against a covered claim payable under this article."[1] (§ 1063.2 (c)(1).) CIGA contended the reference in section 1063.2(c)(1) to "uninsured motorist coverage" must be construed to include *underinsured* motorist coverage.[2] The WCJ disagreed.

CIGA petitioned the WCAB for reconsideration, renewing its claim for a credit under section 1063.2(c)(1). In the alternative, CIGA also argued that the first $85,000 in workers' compensation benefits due Mangum was not a "covered claim" payable by CIGA under subdivision (c)(9) of Insurance Code section 1063.1 (section 1063.1(c)(9)) because that amount was covered by other insurance available to Mangum—namely, his underinsured motorist insurance. Section 1063.1(c)(9) specifically excludes from the definition of a "covered claim" payable by CIGA "any claim to the extent it is covered by any other insurance of a class covered by this article available to the claimant or insured." (§ 1063.1 (c)(9)(i).)

The WCAB granted reconsideration and affirmed the WCJ's decision. The WCAB concluded that "[i]f CIGA were correct about its argument regarding Insurance Code section 1063.1(c)(9) to include *underinsured* coverage, there would be no need for Insurance Code section 1063.2(c) which refers only to *uninsured* motorist. If 1063.2(c) were intended to apply to *underinsured* coverage, it would so provide. There is no such provision. Therefore, we find no statutory provision for the credit sought by CIGA."

CIGA petitioned this court for a writ of review. We granted CIGA's petition to determine the lawfulness of the WCAB's decision following reconsideration. (Lab. Code, §§ 5950–5952.)

## DISCUSSION

■ On review of a decision by the WCAB, we decide questions of statutory interpretation de novo. (*Telles Transport, Inc. v. Workers' Comp.*

---

[1] Mangum stipulated CIGA was entitled to a $15,000 credit for the amount he received from the other driver's insurance carrier.

[2] Uninsured motorist coverage insures against bodily injury caused by an uninsured motor vehicle; underinsured motorist coverage insures against bodily injury caused by an insured motor vehicle that is insured for an amount less than the uninsured motorist limits carried on the motor vehicle of the injured person. (Ins. Code, § 11580.2, subds. (a)(1), (p).)

*Appeals Bd.* (2001) 92 Cal.App.4th 1159, 1163 [112 Cal.Rptr.2d 540]; *Western Growers Ins. Co. v. Workers' Comp. Appeals Bd.* (1993) 16 Cal.App.4th 227, 233 [20 Cal.Rptr.2d 26].)

The question here is whether the statutes governing CIGA—specifically, either section 1063.1(c)(9) or section 1063.2(c)(1)—allow CIGA to claim a credit for underinsured motorist benefits a claimant receives for the same accident that gives rise to his claim for workers' compensation benefits. For the reasons that follow, we conclude the answer is "yes."

We begin with some basic tenets of statutory construction. " 'It is a settled principle in California law that "When statutory language is . . . clear and unambiguous there is no need for construction, and courts should not indulge in it." ' [Citation.] However, despite the general rule that ambiguity is a condition precedent to interpretation, ' "[t]he literal meaning of the words of a statute may be disregarded to avoid absurd results or to give effect to manifest purposes that, in the light of the statute's legislative history, appear from its provisions considered as a whole." ' " (*California Ins. Guarantee Assn. v. Liemsakul* (1987) 193 Cal.App.3d 433, 439 [238 Cal.Rptr. 346].)

A

*Statutes Governing CIGA*

With these principles in mind, we turn to the statutes governing CIGA. "Established in 1969 under the Guarantee Act (art. 14.2 of the Ins. Code), CIGA provides 'insolvency insurance' against loss arising from the failure of an insolvent insurer to discharge its obligations under its insurance policies. [Citations.] Although funded by a compulsory membership of insurance companies doing business in California, CIGA 'was created to provide a limited form of protection for insureds and the public, not to provide a fund to protect insurance carriers.' [Citations.] CIGA's role in guaranteeing workers' compensation claims is therefore limited:

" ' "CIGA is not, and was not created to act as, an ordinary insurance company. [Citation.] It is a statutory entity that depends on the Guarantee Act for its existence and for a definition of the scope of its powers, duties, and protections." [Citation.] "CIGA issues no policies, collects no premiums, makes no profits, and assumes no contractual obligations to the insureds." [Citation.] "CIGA's duties are not co-extensive with the duties owed by the insolvent insurer under its policy." [Citation.] Instead, CIGA's authority and liability in discharging "its statutorily circumscribed duties" are limited to paying the amount of "covered claims." [Citations.] CIGA "is authorized by statute to pay only 'covered claims' of an insolvent insurer, those determined

by the Legislature to be in keeping with the goal of providing protection for the insured public. [Citation.]" [Citation.] CIGA has the statutory authority to "deny a noncovered claim." [Citation.]' " (*Denny's Inc. v. Workers' Comp. Appeals Bd.* (2003) 104 Cal.App.4th 1433, 1438 [129 Cal.Rptr.2d 53].)

### B

*"Covered Claims"—Section 1063.1(c)(9)*

" ' "Since 'covered claims' are not coextensive with an insolvent insurer's obligations under its policies, CIGA cannot and does not ' "stand in the shoes" of the insolvent insurer for all purposes.' [Citation.] Indeed, CIGA is 'expressly forbidden' to do so except where the claim at issue is a 'covered claim.' [Citation.] It necessarily follows that CIGA's first duty is to determine whether a claim placed before it is a 'covered claim.' " [Citation.] "It is unequivocally clear the scope of CIGA's rights and duties turns on the definition of 'covered claim.' " [Citation.]' " (*Denny's Inc. v. Workers' Comp. Appeals Bd., supra,* 104 Cal.App.4th at p. 1438.)

Subdivision (c)(1) of Insurance Code section 1063.1 defines the term "covered claim" to include, "in the case of a policy of workers' compensation insurance," "the obligations of an insolvent insurer . . . to provide workers' compensation benefits under the workers' compensation law of this state." Thus, Mangum's claim for workers' compensation benefits from CIGA falls within the general definition of a "covered claim" CIGA must pay. Section 1063.1(c)(9), however, specifically excludes from a "covered claim" "any claim to the extent it is covered by any other insurance of a class covered by the provisions of this article available to the claimant or insured."

Automobile insurance is "insurance of a class covered by" division 1, part 2 Chapter 1, article 14.2 of the Insurance Code, commonly referred to as the "Guarantee Act". (See Ins. Code, §§ 116, subd. (a), 1063, subd. (a); *CD Investment Co. v. California Ins. Guarantee Assn.* (2000) 84 Cal.App.4th 1410, 1419 [101 Cal.Rptr.2d 806] ("In general, the CIGA statutes cover workers' compensation, automobile, and other lines of property and casualty insurance").) Underinsured motorist coverage is a type of automobile insurance. (See Ins. Code, §§ 116, subd. (a), 11580.2, subds. (n), (p).) Thus, under section 1063.1(c)(9), Mangum's claim for workers' compensation benefits from CIGA is *not* a covered claim payable by CIGA "to the extent [that claim] is covered by [underinsured motorist coverage] available to [Mangum]."

This construction of section 1063.1 is consistent with the purpose underlying the Guarantee Act. "The legislative intent [behind the creation of CIGA] was to create a protection for the public against insolvent insurers when no

secondary insurer is available." (*Central National Ins. Co. v. California Ins. Guarantee Assn.* (1985) 165 Cal.App.3d 453, 458 [211 Cal.Rptr. 435].) "Cases interpreting [section 1063.1(c)(9)] have established that where an insured has overlapping insurance policies and one insurer becomes insolvent, the other insurer, even if only a secondary or excess insurer, is responsible for paying the claim. In other words, CIGA is an insurer of last resort and does not assume responsibility for claims where there is any other insurance available." (*R. J. Reynolds Co. v. California Ins. Guarantee Assn.,* *supra,* 235 Cal.App.3d at p. 600.) "CIGA covers only claims which are not covered by other private insurance." (*Reserve Insurance Co. v. Pisciotta* (1982) 30 Cal.3d 800, 814, fn. 7 [180 Cal.Rptr. 628, 640 P.2d 764].)

Here, there was other insurance available to Mangum to cover the losses he suffered as a result of his work-related car accident—namely, the $85,000 in underinsured motorist benefits he received from his automobile insurance carrier.

Mangum contends that if section 1063.1(c)(9) is read to treat underinsured motorist insurance as being "of the same class as workers' compensation, then CIGA would be precluded altogether from paying workers' compensation to any injured worker who also has [underinsured motorist] coverage," and "[t]hat would put subdivision (c)(9) in direct conflict with § 1063.1(c), which expressly requires CIGA to discharge an insolvent carier's [*sic*] obligations to pay workers' compensation." Not so. ■ As CIGA points out, the exclusion provided by section 1063.1(c)(9) is limited by the words "to the extent." Thus, a claim for workers' compensation benefits is not a "covered claim" only "to the extent" the claim is covered by other insurance. As CIGA notes, "if the insured has available to him other insurance with limits of $15,000, but the [value of] the workers' compensation [claim] is $2 million, then CIGA pays $1,985,000."[3]

## C

### *The Credit Provision—Section 1063.2(c)(1)*

Mangum also argues that if section 1063.1(c)(9) is construed to allow CIGA to offset the $85,000 in underinsured motorist benefits he received against any workers' compensation benefits that are due, "then § 1063.2(c)(1) would be redundant surplusage, serving no purpose." As Mangum notes, " 'If possible, significance should be given to every word, phrase, sentence and

---

[3] The general limit of $500,000 on covered claims payable by CIGA does not apply to claims for workers' compensation benefits. (Ins. Code, § 1063.1, subd. (c)(7).)

part of an act in pursuance of the legislative purpose.' [citation]; 'a construction making some words surplusage is to be avoided.' " (*Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].)

The first sentence of section 1063.2(c)(1) provides that "[i]f damages against uninsured motorists are recoverable by the claimant from his or her own insurer, the applicable limits of the uninsured motorists coverage shall be a credit against a covered claim payable under this article." Thus, under section 1063.2(c)(1), CIGA is entitled to a credit against an injured employee's "covered claim" for workers' compensation benefits for any uninsured motorist benefits available to the employee. However, under our reading of section 1063.1(c)(9), a claim for workers' compensation benefits is not a "covered claim" to the extent it is covered by any automobile insurance available to the claimant. Consequently, as Mangum suggests, our reading of section 1063.1(c)(9) renders the first sentence of section 1063.2(c)(1) superfluous. If the portion of a workers' compensation claim that is covered by uninsured motorist coverage is not a "covered claim" in the first place under section 1063.1(c)(9), then there is no need for the provision in section 1063.2(c)(1) that gives CIGA a credit against a "covered claim" for the applicable limits of the uninsured motorists coverage recoverable by the claimant.

It is a well-established principle of California law that "[a] statute must be so construed as to give effect, if possible, to every portion of it, and without rejecting any part as surplusage, or treating it as a repetition of a provision already made." (*Gates v. Salmon* (1868) 35 Cal. 576, 587.) Drawing on this principle, but ignoring the qualifying phrase "if possible," Mangum suggests that we must interpret section 1063.1(c)(9) in a way that does not render the first sentence of section 1063.2(c)(1) superfluous; however, he fails to offer any interpretation that would accomplish that purpose. More importantly, he fails to suggest any interpretation of section 1063.1(c)(9) that would allow us to exclude underinsured motorist insurance from the "other insurance" provision of the statute while still honoring the legislative intent behind the CIGA statutes to protect the public against insolvent insurers by making CIGA an insurer of last resort responsible for paying claims only when no other insurance is available. (See *California Ins. Guarantee Assn. v. Liemsakul, supra,* 193 Cal.App.3d at p. 440.)

In the end, we are guided by other equally important principles of statutory interpretation to construe section 1063.1(c)(9) in CIGA's favor despite the fact that our construction of the statute renders the first sentence of section 1063.2(c)(1) superfluous. In construing a statute, "The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of

the act." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) "A construction or conclusion plainly not contemplated by the legislature should not be given to a statute if it can be avoided. When a statute is fairly susceptible of two constructions, one leading inevitably to mischief or absurdity and the other consisting of sound sense and wise policy, the former should be rejected and the latter adopted." (*People v. Ventura Refining Co.* (1928) 204 Cal. 286, 292 [268 P. 347].)

If CIGA were precluded from claiming a credit for underinsured motorist benefits covering the same accident giving rise to a workers' compensation claim, as Mangum's construction of the statutes would require, one of two results would occur in cases like this. Neither of those results, however, is consistent with sound sense or wise policy, and neither is consistent with the legislative intent behind the Guarantee Act. First, the underinsured motorist insurance carrier could choose to reduce its payments to the injured employee under subdivision (h)(1) of Insurance Code section 11580.2 "[b]y the amount paid and the present value of all amounts payable to [the employee] under any workers' compensation law, exclusive of nonoccupational disability benefits."[4] In that event, CIGA would be the payer of first resort, rather than last resort, and "would in effect be subsidizing . . . a solvent insurer, . . . a result antithetic to the CIGA scheme." (*California Ins. Guarantee Assn. v. Liemsakul, supra*, 193 Cal.App.3d at p. 441.)

Second, the underinsured motorist insurance carrier might not reduce its payments by the amount of workers' compensation benefits to be paid by CIGA (as happened here), in which case the injured employee would end up with a double recovery for the accident—collecting both underinsured motorist benefits *and* workers' compensation benefits. This result, too, would fail to serve the legislative purpose of making CIGA an insurer of last resort, responsible for protecting the public from losses occasioned by an insolvent insurer *only* when no other insurance is available. (See *California Ins. Guarantee Assn. v. Liemsakul, supra*, 193 Cal.App.3d at p. 440; *R. J. Reynolds Co. v. California Ins. Guarantee Assn., supra*, 235 Cal.App.3d at p. 600; *Reserve Insurance Co. v. Pisciotta, supra*, 30 Cal.3d at p. 814, fn. 7.)

This second result would also lead to the anomalous situation in which a victim of an inadequately insured driver would receive more compensation than the victim of an adequately insured driver. As Mangum himself acknowledged when he agreed CIGA was entitled to a credit for the $15,000 he received from the other driver's insurance, CIGA is entitled to claim a credit

---

[4] Subdivision (h) of Insurance Code section 11580.2 refers to the reduction of "[a]ny loss payable under the terms of the uninsured motorist endorsement or coverage," which "definitionally encompasses underinsurance coverages." (*Rudd v. California Casualty Gen. Ins. Co.* (1990) 219 Cal.App.3d 948, 954 [268 Cal.Rptr. 624].)

for any recovery by the injured employee from the third party tortfeasor. (See Lab. Code, §§3858, 3861; *State Comp. Ins. Fund v. Workers' Comp. Appeals Bd.* (1997) 53 Cal.App.4th 579, 583 [61 Cal.Rptr.2d 794].) Thus, if the other driver had been insured for $100,000 instead of $15,000, and Mangum had recovered $100,000 from the other driver's insurance, CIGA would have been entitled to a $100,000 credit. Under Mangum's position, however, since $85,000 of the $100,000 he recovered came not from the other driver's insurance but from his own underinsured motorist coverage, CIGA is entitled to a credit of only $15,000, rather than the full $100,000. Accordingly, if we were to accept Mangum's argument, Mangum's recovery would be greater because the other driver had less insurance. This is neither sound sense nor wise policy. "We cannot ascribe to the Legislature an intention that victims of inadequately insured tortfeasors should receive more compensation than victims of adequately insured tortfeasors." (*Rudd v. California Casualty Gen. Ins. Co.*, *supra*, 219 Cal.App.3d at p. 955.)

At oral argument, Mangum pointed out that workers' compensation benefits do not compensate the claimant for certain results of an injury, such as pain and suffering, while underinsured motorist benefits can and often do. (See *Orosco v. Sun-Diamond Corp.* (1997) 51 Cal.App.4th 1659, 1664 [60 Cal.Rptr.2d 179] ["Recovery under workers' compensation does not provide the full range of relief available in a personal injury tort action [citation], and the workers' compensation remedy denies any recovery at all for noneconomic damages such as pain and suffering"].) Mangum contends it would be inappropriate to allow CIGA to claim a credit against the workers' compensation benefits it owes him for all of the underinsured motorist benefits he received because the underinsured motorist benefits might have been paid, in whole or in part, to compensate him for losses not covered by workers' compensation, for which CIGA is not responsible.

This argument ignores the fact that under workers' compensation law, the employer's or insurer's right to reimbursement from any proceeds received from the third party tortfeasor "takes first and full priority" over any recovery by the claimant. (*Gapusan v. Jay* (1998) 66 Cal.App.4th 734, 741 [78 Cal.Rptr.2d 250]; Lab. Code, § 3850 et seq.) "A judgment, just as a settlement, may be insufficient to reimburse the employer and compensate the employee for pain and suffering or other damages not fully covered by workers' compensation. Yet, after the payment of attorney fees and other costs, the employer is entitled to reimbursement from the entire amount of the judgment. [Citation.] A nonnegligent employer is not reimbursed solely from economic damages . . . ." (*Gapusan*, at p. 741, fn. 5.)

■ If an insurer or employer is entitled to reimbursement from the entire amount of a judgment against the third party tortfeasor, we see no reason why

CIGA should not be entitled to a credit against the entire amount of a claimant's underinsured motorist benefits—regardless of whether those benefits may have been meant to compensate for losses not compensable by workers' compensation.

D

*Applicability of Insurance Code Section 11580.2 to CIGA*

Mangum contends that CIGA is "prohibited from reducing its obligation to pay workers' compensation benefits" by the underinsured motorist benefits he received because of subdivision (c)(4) of Insurance Code section 11580.2. That statute provides: "The insurance coverage provided for in this section [i.e., uninsured motorist coverage and underinsured motorist coverage] does not apply either as primary or as excess coverage: [¶] . . . [¶] (4) In any instance where it would inure directly or indirectly to the benefit of any workers' compensation carrier or to any person qualified as a self-insurer under any workers' compensation law, or directly to the benefit of the United States, or any state or any political subdivision thereof." Citing *DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 397 [20 Cal.Rptr.2d 523, 853 P.2d 978], Mangum claims "CIGA is 'a governmental entity,' " and therefore underinsured motorist coverage cannot inure to the benefit of CIGA.

■ Mangum's reliance on *DuBois* and subdivision (c)(4) of Insurance Code section 11580.2 is misplaced. The statute prohibits underinsured motorist coverage from inuring to the benefit of a "political subdivision" of the state. Notwithstanding *DuBois*, CIGA is not a political subdivision of the State of California. The Supreme Court described CIGA as "a governmental entity" in *DuBois* while summarizing its decision in *Isaacson v. California Ins. Guarantee Assn.* (1988) 44 Cal.3d 775 [244 Cal.Rptr. 655, 750 P.2d 297]. In *Isaacson*, however, the Supreme Court described CIGA as " 'an involuntary, unincorporated association of insurers admitted to transact business in California.' " (*Id.* at p. 786, quoting *In re Imperial Ins. Co.* (1984) 157 Cal.App.3d 290, 293 [203 Cal.Rptr. 664].) This description was consistent with the statute that created CIGA. (See Ins. Code, § 1063.) Nothing in that statute makes CIGA a political subdivision of the state. Rather than being a political subdivision of the state or any other type of "governmental entity," "CIGA is a mandatory organization of California insurers" (*Reserve Insurance Co. v. Pisciotta, supra*, 30 Cal.3d at p. 814, fn. 7), which is funded by "premium payments from its member insurers" (Ins. Code, § 1063.5). Accordingly, subdivision (c)(4) of Insurance Code section 11580.2 does not apply to CIGA.

## CONCLUSION

We conclude CIGA is entitled to a credit for the $85,000 in underinsured motorist benefits Mangum received from his automobile insurance carrier because Mangum's claim for workers' compensation benefits is not a "covered claim" payable by CIGA to the extent of the underinsured motorist benefits Mangum received. Because we base our decision on section 1063.1(c)(9), we need not reach the question of whether CIGA would be entitled to a credit under section 1063.2(c)(1).

"[W]hen a workers' compensation decision rests on the WCAB's erroneous interpretation of the law, the reviewing court will annul the decision." (*Telles Transport, Inc. v. Workers' Comp. Appeals Bd.*, *supra*, 92 Cal.App.4th at p. 1163.) Accordingly, that is what we will do.

## DISPOSITION

The WCAB's October 7, 2002, decision after reconsideration is annulled and the matter is remanded for further proceedings consistent with the views expressed in this opinion.

Davis, Acting P. J., and Raye, J., concurred.

The petition of respondent Scott Mangum for review by the Supreme Court was denied January 14, 2004.