[No. B174412. Second Dist., Div. Seven. Apr. 27, 2005.]

WOLFRAM BERGER et al., Plaintiffs and Appellants, v.
CALIFORNIA INSURANCE GUARANTEE ASSOCIATION, Defendant
and Respondent.

## Counsel

Law Offices of Steven L. Zelig and Steven L. Zelig for Plaintiffs and Appellants.

Black, Compean & Hall, Frederick G. Hall and Jacqueline L. Shulman for Defendant and Respondent.

## Opinion

**PERLUSS, P. J.**—This case involves the interplay between Code of Civil Procedure section 340.9 (section 340.9), which revives certain time-barred claims against insurers for policy benefits for losses caused by the January 17, 1994 Northridge earthquake, and the responsibilities of the California Insurance Guarantee Association (CIGA), which is obligated under Insurance Code section 1063 et seq. to pay the "covered claims" of insolvent insurers. Specifically, does an insured state a cause of action against CIGA for violation of Insurance Code section 1063 et seq. by alleging he or she has a Northridge earthquake claim against an insolvent insurer, revived by section 340.9, that has been denied by CIGA?

Based on the purpose of CIGA to protect the insured public from insolvent insurers by paying "covered claims," as defined by Insurance Code section 1063.1, subdivision (c)(1) (*Industrial Indemnity Co. v. Workers' Comp. Appeals Bd.* (1997) 60 Cal.App.4th 548, 557 [70 Cal.Rptr.2d 295]), and the Legislature's intent in enacting section 340.9 to " 'bring needed relief to the victims of the Northridge earthquake' " by providing a one-year window for insureds with otherwise time-barred claims to file suit against their insurance company (*20th Century Ins. Co. v. Superior Court* (2001) 90 Cal.App.4th 1247, 1267 [109 Cal.Rptr.2d 611]), the answer is "yes," at least with respect to claims against insurers declared insolvent after the effective date of section 340.9. We, therefore, reverse the order of dismissal, finding the trial court erred by concluding CIGA could have no obligations with respect to an otherwise time-barred claim for policy benefits revived by section 340.9. Because the operative complaint in this case is wholly deficient in its allegations of revival of the insureds' claim under section 340.9 and of CIGA's actions, if any, on the claim, however, we remand with directions for the trial court to enter an order sustaining CIGA's demurrer with leave to amend.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Original Complaint and CIGA's Demurrer*

On December 31, 2001 Wolfram and Renata Berger and Jerry and Celia Kayle filed a complaint against their insurer, Reliance Insurance Company, alleging causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud and negligent misrepresentation based on Reliance's failure to pay policy benefits for damage to their properties caused by the Northridge earthquake.[1] Although the complaint was filed on December 31, 2001, the last day of the revival period under section 340.9, it does not mention the statute.[2] The complaint alleges, "Plaintiffs gave timely and adequate notice of claim." Apparently realizing Reliance was insolvent, on October 25, 2002 the Bergers and the Kayles amended their complaint, substituting CIGA for Doe 100, which included it in the allegations as to each cause of action.[3]

CIGA demurred to the complaint. The trial court sustained without leave to amend the demurrer to the causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud and negligent misrepresentation on the ground those causes of action against CIGA were time-barred.[4] The trial court granted the Bergers and the Kayles leave to

---

[1] Although the complaint does not specifically include a cause of action for unfair business practices, it alleges the Bergers and the Kayles are suing individually and on behalf of the general public and prays for relief under Business and Professions Code section 17200.

[2] Section 340.9 provides, "(a) Notwithstanding any other provision of law or contract, any insurance claim for damages arising out of the Northridge earthquake of 1994 which is barred as of the effective date of this section solely because the applicable statute of limitations has or had expired is hereby revived and a cause of action thereon may be commenced provided that the action is commenced within one year of the effective date of this section. This subdivision shall only apply to cases in which an insured contacted an insurer or an insurer's representative prior to January 1, 2000, regarding potential Northridge earthquake damage. [¶] (b) Any action pursuant to this section commenced prior to, or within one year from, the effective date of this section shall not be barred based upon this limitations period."

[3] Reliance was not involved in the trial court proceedings as a result of its insolvency and is not a party to this appeal. Although the Bergers and the Kayles maintain Reliance became insolvent after they filed their original complaint on December 31, 2001, they are incorrect: Reliance was declared insolvent in an order of liquidation by the Commonwealth Court of Pennsylvania on October 3, 2001. We take judicial notice of the liquidation order. (Evid. Code, §§ 459, subd. (a) [reviewing court may take judicial notice of any matter specified in Evid. Code, § 452], 452, subd. (d) [judicial notice may be taken of "[r]ecords of (1) any court of this state or (2) any court of record of the United States or of any state of the United States"].)

[4] The trial court found, because the complaint had been filed almost eight years after the Northridge earthquake, all causes of action were time barred absent a revival under section 340.9. The court then ruled section 340.9 revived only contract and contract-related claims and thus could not save the noncontractual causes of action. As to the causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing, the court found

amend to assert a cause of action against CIGA based on its statutory duties under Insurance Code section 1063 et seq., invoked as a result of Reliance's insolvency.

### 2. The First Amended Complaint and CIGA's Demurrer

The Bergers and the Kayles filed a first amended complaint on February 13, 2003,[5] disregarding the trial court's order sustaining without leave to amend the demurrer to the causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud and negligent misrepresentation in the original complaint and alleging those same causes of action against Reliance and CIGA, and adding a cause of action against CIGA for violation of Insurance Code section 1063 et seq.[6] The first amended complaint alleges Reliance is in liquidation; and "[t]he State of Pennsylvania has issued an order requiring proof of claim on or before December 31, 2003. Plaintiffs have and/or will be submitting that claim and accordingly said claim has been timely submitted."

As to CIGA, the first amended complaint alleges, "Plaintiffs are further informed and believe that CIGA will administrate the claim in accordance with California Insurance Code § 1063. Plaintiffs are informed and believe that CIGA will act in accordance with its standard practice—refusing to adjust valid claims. Plaintiffs therefor[e] affirmatively allege that CIGA has already denied Plaintiffs' valid claim giving rise to a cause of action" for breach of its statutory obligations. With respect to Insurance Code section 1063 et seq., the first amended complaint alleges, "In the alternative to the preceding causes of action asserted directly against NATIONAL AUTO [*sic*], Plaintiff[s] [are] now informed and believe[] and based thereon allege that CIGA is the entity now responsible for handling and/or adjustment of Plaintiff[s'] claim against NATIONAL AUTO [*sic*]. Plaintiff[s] [are] now informed and believe[] and based thereon allege that CIGA accepted responsibility to adjust the claim pursuant to Insurance Code § 1063." The first amended complaint continues, "As of the filing of this document, CIGA refuses to adjust the claim of Plaintiff. CIGA has done nothing relative to the

CIGA was not a proper defendant because it had no contractual relationship with the Bergers and the Kayles and, alternatively, section 340.9 did not apply to CIGA because it is not an insurer.

[5] Although the first amended complaint is file-stamped "February 13, 2002," the record is clear, and the parties do not dispute, that it was filed on February 13, 2003.

[6] As in the original complaint, the first amended complaint does not include a cause of action for unfair business practices but alleges the Bergers and the Kayles are suing in their individual capacities and on behalf of the general public and prays for relief under Business and Professions Code section 17200.

adjustment. By this complaint, Plaintiff once against urges CIGA to conduct itself in a manner consistent with the 'public trust' and in accordance with the law. In the event CIGA notifies Plaintiff of an intent to adjust (as opposed to completely ignoring the claim) Plaintiff would be inclined to dismiss the present action against CIGA without prejudice on the condition that CIGA stipulate that any necessary refiling will be deemed to relate back to the filing of this action."

CIGA filed a demurrer to the first amended complaint, contending it was uncertain and, in any event, failed to state a cause of action for violation of Insurance Code section 1063 et seq. CIGA asserted the claims for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud and negligent misrepresentation should be stricken based on the trial court's prior order sustaining without leave to amend a demurrer to those causes of action.

### 3. *The Trial Court's Ruling and Dismissal of the Case*

The trial court sustained the demurrer to the first amended complaint, finding the Bergers and the Kayles had failed to state a cause of action against CIGA for violation of Insurance Code section 1063 et seq. because their claim for policy benefits was time-barred and section 340.9 did not revive claims against CIGA. The court granted the Bergers and the Kayles leave to amend to allege facts demonstrating their claims were timely under principles of equitable tolling. The court struck the remaining causes of action in the first amended complaint based on its ruling on CIGA's demurrer to the original complaint.

The Bergers and the Kayles declined to amend the first amended complaint. On that basis CIGA filed a motion to dismiss, which was unopposed. The trial court dismissed the action.[7]

---

[7] The trial court initially entered a minute order on January 26, 2004 memorializing its dismissal of the action. Although not included in the limited appellants' appendix filed by the Bergers and the Kayles, according to the trial court's register of actions, CIGA filed a notice of entry of judgment on January 30, 2004, presumably in reference to the January 26, 2004 minute order. The Bergers and the Kayles filed a notice of appeal on March 30, 2004. Subsequently, on August 10, 2004, the trial court entered a written order of dismissal. (See Code Civ. Proc., § 581d ["All dismissals ordered by the court shall be in the form of a written order signed by the court and filed in the action and those orders when so filed shall constitute judgments and be effective for all purposes"].) We treat the notice of appeal filed by the Bergers and Kayles as premature and construe it as an appeal from the August 10, 2004 order of dismissal. (Cal. Rules of Court, rule 2(e) ["A notice of appeal filed after judgment is rendered but before it is entered is valid and is treated as filed immediately after entry of judgment"].)

## CONTENTIONS

The Bergers and the Kayles contend the trial court erred by sustaining CIGA's demurrer to the first amended complaint because they have stated a cause of action against CIGA for violation of Insurance Code section 1063 et seq. They also contend the first amended complaint states a claim for unfair business practices under Business and Professions Code section 17200.[8]

## DISCUSSION

### 1. *Standard of Review*

■ In reviewing an order sustaining a demurrer, we independently review the complaint to determine whether the facts alleged state a cause of action under any possible legal theory. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 [9 Cal.Rptr.2d 92, 831 P.2d 317].) We give the complaint a reasonable interpretation, "treat[ing] the demurrer as admitting all material facts properly pleaded," but do not "assume the truth of contentions, deductions or conclusions of law. [Citation.]" (*Ibid.*)

■ " 'Where the complaint is defective, "[i]n the furtherance of justice great liberality should be exercised in permitting a plaintiff to amend his [or her] complaint." ' " (*Aubry v. Tri-City Hospital Dist., supra*, 2 Cal.4th at p. 970.) Leave to amend may be granted on appeal even in the absence of a request by the plaintiff to amend the complaint. (*Id.* at p. 971; see Code Civ. Proc., § 472c, subd. (a).)

---

[8] The Bergers and the Kayles do not argue in their opening brief the trial court erred by striking from the first amended complaint the causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud and negligent misrepresentation based on its prior order sustaining without leave to amend CIGA's demurrer to those causes of action in the original complaint. Accordingly, any argument that the causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud and negligent misrepresentation are viable has been waived. (*Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 [188 Cal.Rptr. 115, 655 P.2d 317] [issue not raised on appeal may be deemed waived]; see *Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6 [76 Cal.Rptr.2d 457] [appellate court refused to reach merits of causes of action when appellants did not address trial court's summary adjudication of those causes of action].) We note, however, there is no contractual relationship between CIGA and the insureds of an insolvent insurer on which to base a claim for breach of contract or bad faith. (*Isaacson v. California Ins. Guarantee Assn.* (1988) 44 Cal.3d 775, 789 [244 Cal.Rptr. 655, 750 P.2d 297].) In addition, CIGA is statutorily immune from liability for the torts of an insurance company and from tort liability for its own conduct in administering the claims of an insolvent insurer. (Ins. Code, §§ 1063.2, subd. (g), 1063.12, subd. (a).) (See section 2a of Discussion.)

2. *Although Section 340.9 Does Not Directly Apply to CIGA, the Statute Affects CIGA's Statutory Obligations*

a. *CIGA's Creation and Its Statutory Obligations*

■ "CIGA was created by legislation in 1969 ([Ins. Code], § 1063 et seq. [known as the Guarantee Act]) to establish a fund from which insureds could obtain financial and legal assistance in the event their insurers become insolvent, i.e. 'to provide insurance against "loss arising from the failure of an insolvent insurer to discharge its obligations under its insurance policies." (Ins. Code, § 119.5)' [Citations.]" (*Isaacson v. California Ins. Guarantee Assn.* (1988) 44 Cal.3d 775, 784 [244 Cal.Rptr. 655, 750 P.2d 297] (*Isaacson*).) Its purpose is "to protect members of the public from the insolvency of insurers by spreading throughout the industry a loss suffered by an insured as the result of the insolvency of an insurer. [Citations.]" (*Black Diamond Asphalt, Inc. v. Superior Court* (2003) 114 Cal.App.4th 109, 118 [7 Cal.Rptr.3d 466]; see Ins. Code, §§ 1063.5, 1063.14.) "All insurers transacting insurance business in California are involuntary members of CIGA, unless specifically exempted by statute. ([Ins. Code], §§ 1063, subd. (a), 1063.1, subd. (a).)" (*Isaacson*, at p. 784.)

■ " ' " 'CIGA is not, and was not created to act as, an ordinary insurance company. [Citation.] It is a statutory entity that depends on the Guarantee Act for its existence and for a definition of the scope of its powers, duties, and protections.' [Citation.] 'CIGA issues no policies, collects no premiums, makes no profits, and assumes no contractual obligations to the insureds.' [Citation.] 'CIGA's duties are not co-extensive with the duties owed by the insolvent insurer under its policy.' [Citation.] Instead, CIGA's authority and liability in discharging 'its statutorily circumscribed duties' are limited to paying the amount of 'covered claims.' [Citations.] CIGA 'is authorized by statute to pay only "covered claims" of an insolvent insurer, those determined by the Legislature to be in keeping with the goal of providing protection for the insured public. [Citation.]' [Citation.] CIGA has the statutory authority to 'deny a noncovered claim.' [Citation.]" ' [Citation.]" (*California Insurance Guarantee Assn. v. Workers' Comp. Appeals Bd.* (2003) 112 Cal.App.4th 358, 363–364 [5 Cal.Rptr.3d 127].)

Based on its statutory duties, CIGA's first responsibility in a case is to determine whether a claim submitted by an insured of an insolvent insurer is a "covered claim" within the scope of the Guarantee Act. (*California Insurance Guarantee Assn. v. Workers' Comp. Appeals Bd.*, *supra*, 112 Cal.App.4th at p. 364.) As relevant to this case, the statutory definition of

"covered claims" is "the obligations of an insolvent insurer . . . (i) imposed by law and within the coverage of an insurance policy of the insolvent insurer; (ii) which were unpaid by the insolvent insurer; (iii) which are presented as a claim to the liquidator in this state or to the association on or before the last date fixed for the filing of claims in the domiciliary liquidating proceedings; (iv) which were incurred prior to the date coverage under the policy terminated and prior to, on, or within 30 days after the date the liquidator was appointed; (v) for which the assets of the insolvent insurer are insufficient to discharge in full."[9] (Ins. Code, § 1063.1, subd. (c)(1).) CIGA's liability on a covered claim is statutorily capped at $500,000. (Ins. Code, § 1063.1, subd. (c)(7).)

█ Because CIGA's obligations are not coextensive with the insolvent insurer, it is not responsible for the tortious conduct of the insolvent insurer. (Ins. Code, § 1063.2, subd. (g) [" 'Covered claims' shall not include any judgments against or obligations or liabilities of the insolvent insurer or the commissioner, as liquidator, or otherwise resulting from alleged or proven torts, nor shall any default judgment or stipulated judgment against the insolvent insurer, or against the insured of the insolvent insurer, be binding against the association"].) CIGA also has been held immune from tort liability for its own conduct in fulfilling its duties to pay "covered claims." (*Isaacson, supra*, 44 Cal.3d at pp. 783–789 [CIGA immune from liability for unfair practices under Ins. Code, § 790.03 and for intentional infliction of emotional distress, and cannot be sued for common law bad faith because it has no contractual relationship with the insured]; see Ins. Code, § 1063.12, subd. (a) [CIGA "shall under no circumstances be liable for any sum in excess of the amount of covered claims of the insolvent insurer"].) Nevertheless, "if CIGA improperly denies coverage or refuses to defend an insured on a 'covered claim' arising under an insolvent insurer's policy, it breaches its statutory duties under the Guarantee Act." (*Isaacson, supra*, 44 Cal.3d at p. 792.)

### b. *Section 340.9*

█ Although the limitations period in California for actions on contracts is four years (Code Civ. Proc., § 337), the Legislature has permitted insurers providing homeowners coverage to shorten this period to one year from the inception of the insured's loss.[10] (Ins. Code, §§ 2070, 2071; see

---

[9] The statute also requires for all classes of insurance except workers' compensation insurance that "the claimant or insured is a resident of [California] at the time of the insured occurrence, or the property from which the claim arises is permanently located in [California]." (Ins. Code, § 1063.1, subd. (c)(1).)

[10] Although the one-year limitations period is mandated by Insurance Code section 2071 for standard homeowners fire insurance policies, and not for stand-alone earthquake policies, "the

*Prudential-LMI Com. Insurance v. Superior Court* (1990) 51 Cal.3d 674, 678, 680 [274 Cal.Rptr. 387, 798 P.2d 1230] ["inception of the loss" means "that point in time when appreciable damage occurs and is or should be known to the insured, such that a reasonable insured would be aware that his notification duty under the policy has been triggered"].)

On January 1, 2001 section 340.9 became effective, specifically to obviate the adverse impact the one-year limitations period was having on the ability of many insureds to obtain compensation from their insurance companies for property damage caused by the Northridge earthquake. The statute revives Northridge earthquake claims that otherwise would be time-barred in cases in which "an insured contacted an insurer or an insurer's representative prior to January 1, 2000, regarding potential Northridge earthquake damage" and allows a cause of action based on the revived claim to be filed within one year of the effective date of the statute.[11] (§ 340.9, subd. (a) [claim for damages arising out of the Northridge earthquake that is barred "solely because the applicable statute of limitations has or had expired is hereby revived and a cause of action thereon may be commenced provided that the action is commenced within one year of [January 1, 2001]"]; see *Newell v. State Farm General Ins. Co.* (2004) 118 Cal.App.4th 1094, 1105 [13 Cal.Rptr.3d 343] [Legislature expressly directed that section 340.9 "operate to revive certain earthquake claims for a period of one year only"].)

The legislative history of the statute indicates the author introduced the bill because the one-year limitations period " 'has unfairly barred victims [of the Northridge earthquake] from being compensated for their losses because many were tragically misled [by their insurers or representatives thereof] about the extent of damage suffered as a result of the earthquake.' " (*Hellinger v. Farmers Group, Inc.* (2001) 91 Cal.App.4th 1049, 1058 [111 Cal.Rptr.2d 268].) According to the statute's proponents, " '[T]housands of people who suffered damage to their homes did not receive the benefit of their insurance contracts because of the insurance companies' conduct. . . . [A]mple evidence exists to show that insurers handling Northridge earthquake claims engaged in a systematic program of misleading consumers about the nature and extent

insurers' standard practice [is] to incorporate the form language from Insurance Code section 2071 into all of its policies." (*20th Century Ins. Co. v. Superior Court, supra,* 90 Cal.App.4th at p. 1277, fn. 33.)

[11] The statute does not apply to "[a]ny claim that has been litigated to finality in any court of competent jurisdiction prior to [January 1, 2001]" or to "[a]ny written compromised settlement agreement which has been made between an insurer and its insured where the insured was represented by counsel admitted to the practice of law in California at the time of the settlement, and who signed the agreement." (§ 340.9, subd. (d).)

of damage to their homes. Later, when it became clear that the problems were indeed significant, . . . the insurers simply refused to pay claims on the basis that the claims had become time-barred.' " (*20th Century Ins. Co. v. Superior Court, supra*, 90 Cal.App.4th at p. 1267.)

■ Section 340.9 has been held to revive claims against insurers for breach of contract and breach of the implied covenant of good faith and fair dealing, which are based on the contract of insurance, but not claims for fraud, which do not rest on the insurers' failure to perform under the insurance policy. (*20th Century Ins. Co. v. Superior Court, supra*, 90 Cal.App.4th at pp. 1279–1281; *Hellinger v. Farmers Group, Inc., supra*, 91 Cal.App.4th at pp. 1067–1068.)

### c. *CIGA Is Responsible for at Least Some Claims Revived by Section 340.9*

CIGA contends it is not responsible for paying any otherwise time-barred claims against an insolvent insurer that are revived by section 340.9 because the statute applies only to insurers and CIGA is not an insurer. According to CIGA, unless an insured can demonstrate that his or her claim for policy benefits against an insolvent insurer is timely under the policy's one-year limitations period, CIGA has no statutory liability on the claim.

■ Although we agree section 340.9 does not directly apply to CIGA, we disagree that CIGA can rely on the contractual one-year limitations period in an insurance policy to deny any responsibility for a revived claim against an insurer declared insolvent after the statute's effective date.[12] Section 340.9 "overrides" the contractual language in a policy limiting the period in which an insured may file suit against its insurer. (*Bialo v. Western Mutual Ins. Co.* (2002) 95 Cal.App.4th 68, 78–79 [115 Cal.Rptr.2d 3] [statute "itself precludes contractual provisions from limiting its applicability"]; see *20th Century Ins. Co. v. Superior Court, supra*, 90 Cal.App.4th at pp. 1268–1274 [by reviving claims beyond the one-year limitations provision, section 340.9 does not impermissibly impair the contract of coverage or violate vested due process rights]; *Hellinger v. Farmers Group, Inc., supra*, 91 Cal.App.4th at pp. 1061–1067 [same].) It creates a new limitations period for claims that fall within its terms by giving insureds one year from its effective date of January 1, 2001 to file an action against an insurer based on a revived claim.

---

[12] There is no dispute in this case that Reliance was declared insolvent *after* the effective date of section 340.9. We leave to another case and another day the potentially more difficult question whether CIGA has any responsibility for claims revived by section 340.9 as to insurers declared insolvent prior to the January 1, 2001 effective date of the statute.

(*Rosenblum v. Safeco Ins. Co.* (2005) 126 Cal.App.4th 847, 858 [24 Cal.Rptr.3d 427] [section 340.9 "did nothing more than reopen the filing window, for a one year period, to those *otherwise viable* cases that had become time barred"].) Thus, for a claim revived by section 340.9, the one-year limitations period in the policy has been effectively replaced, at least as to insurers who were not declared insolvent prior to January 1, 2001. CIGA, therefore, cannot refuse a claim revived by section 340.9 based on the superseded one-year limitations provision in the policy issued by those insurers.

■ This result comports with both the purpose of CIGA and the reason for the enactment of section 340.9. Although it is not an insurer, nor are its duties coextensive with those of an insurance company, CIGA was created to protect the insured public by paying "covered claims" in the event of insurer insolvency. (*California Insurance Guarantee Assn. v. Workers' Comp. Appeals Bd.*, *supra*, 112 Cal.App.4th at pp. 363–364; see also *Isaacson*, *supra*, 44 Cal.3d at p. 784.) In enacting section 340.9, the Legislature determined a claim that otherwise would be barred solely because the applicable limitations period had expired will now be within the coverage of the insurance policy. A revived claim under section 340.9 against an insurer declared insolvent after the statute's effective date, therefore, is a covered claim "imposed by law" and "within the coverage of an insurance policy." (Ins. Code, § 1063.1, subd. (c)(1).)

To support its contention that it should be able to rely on the one-year limitations period in the policy despite section 340.9, CIGA cites *Aloha Pacific, Inc. v. California Ins. Guarantee Assn.* (2000) 79 Cal.App.4th 297 [93 Cal.Rptr.2d 148] (*Aloha Pacific*), in which Division Four of this court held CIGA may contest whether a claim is covered by the insurance policy of an insolvent insurer, even though a third party claimant had previously obtained a judicial determination that the insurer " 'ha[d] no present basis for denying coverage' and that its 'failure to reserve its right to contest coverage under the policy's exclusions of coverage for willful acts or trademark infringement waived its right to assert those exclusions as a basis for denying coverage in the federal action [against its insured for trademark infringement].' [Citation.]" (*Id.* at p. 305.) When the third party attempted to collect on the claim from CIGA after the insurer became insolvent, CIGA declined, contending it could litigate whether the insolvent insurer's policy covered the claim despite the prior judgment. (*Id.* at pp. 306, 308.) Division Four agreed with CIGA, reasoning that, although the prior judgment had concluded the insurer did not have the right to deny coverage based on its limited reservation of rights, it did not determine whether the claim was "within the

risks of loss protected against by the insolvent insurer's policy." (*Id.* at pp. 312–313.) In fact, notwithstanding the faulty reservation of rights, the claim was not covered by the policy and, therefore, did not come within the limited definition of "covered claims" in Insurance Code section 1063.1, subdivision (c)(1), by which CIGA's obligation to pay must be measured. (*Aloha Pacific*, at pp. 308–313.)

*Aloha Pacific* is distinguishable from the situation presented here, both as a factual matter and in terms of the policy considerations involved. In *Aloha Pacific* Division Four concluded CIGA was entitled to look to the policy itself to determine whether the claim was covered within the meaning of Insurance Code section 1063.1, subdivision (c)(1), without regard to the insurer's failure to properly assert all policy-based grounds for denying or limiting coverage. In contrast, with section 340.9 the Legislature has overridden policy language to afford qualifying insureds an extended limitations period, in effect amending the policy to provide an additional benefit. Just as CIGA was entitled to look to the policy itself to determine its obligations in *Aloha Pacific*, in this case CIGA is required to look to the policy itself, as now revised by the Legislature, to determine whether a Northridge earthquake victim's property damage claim is covered under Insurance Code section 1063.1, subdivision (c)(1).[13]

 CIGA also contends that, because it is not responsible for the wrongful acts of an insolvent insurer, it should not be obligated to pay claims revived by section 340.9, which was enacted because insurers in many cases had wrongfully denied policy benefits for earthquake damage. The Legislature in enacting section 340.9, however, was clear the purpose of the statute was to provide insureds with another chance to seek compensation for Northridge earthquake damage, not to punish insurers for any wrongful conduct. (*20th Century Ins. Co. v. Superior Court, supra,* 90 Cal.App.4th at p. 1268, fn. 21 [statute "intended to 'provide these individuals who . . . were victimized twice, (once by the earthquake and a second time by their

---

[13] CIGA, in effect, argues section 340.9 merely prevents insurers from asserting a defense based on the one-year limitations period in their insurance policies, which does not affect CIGA's right to deny a claim for policy benefits because it was not filed within one year of the inception of loss. But section 340.9 does more than simply limit an insurer's ability to rely on the one-year limitations period: It alters the terms of the policy to allow insureds an additional year from its effective date to bring suit against their insurer. (*Bialo v. Western Mutual Ins. Co., supra,* 95 Cal.App.4th at p. 78 [section 340.9 "overrides" one-year contractual limitations period]; see *20th Century Ins. Co. v. Superior Court, supra,* 90 Cal.App.4th at p. 1270 ["The Legislature's enactment of section 340.9 to correct insurers' wrongful processing of Northridge earthquake claims should have been reasonably expected, rendering the insurers' policies susceptible to alteration"].)

insurance companies) with a reasonable "second chance" to seek redress for their damages.' [Citation.]"]; see also *21st Century Ins. Co. v. Superior Court* (2005) 127 Cal.App.4th 1351, 1365, fn. 8 [26 Cal.Rptr.3d 476] [purpose of section 340.9 is compensation, not to punish insurers; "it is clear that the statute was tailored to restore to earthquake victims any lost civil causes of action, not to punish insurers"].) Thus, CIGA's responsibility to administer claims revived by section 340.9 does not make it liable, directly or indirectly, for the wrongful acts of insurers and in no way undermines its statutory immunity from liability for the torts of the insolvent insurer. (Ins. Code, § 1063.2, subd. (g).)

CIGA also maintains *Hydro-Mill Co., Inc. v. Hayward, Tilton & Rolapp Ins. Associates, Inc.* (2004) 115 Cal.App.4th 1145, 1167 [10 Cal.Rptr.3d 582], a case in which Division One of our court found section 340.9 did not revive a claim against an insurance broker for malpractice, supports its argument it is not responsible for any revived claims. But our holding that CIGA must administer revived claims, at least as to insurers declared insolvent after the effective date of section 340.9, is not predicated on a finding that section 340.9 directly applies to CIGA, a conclusion that would conflict with Division One's analysis. Rather, it is premised on the fact that section 340.9 alters the one-year limitations provision in the insurance policy. CIGA, therefore, cannot rely on that superseded provision to maintain a claim is not covered within the meaning of Insurance Code section 1063.1, subdivision (c)(1). In sum, although section 340.9 does not directly apply to CIGA, it plainly affects CIGA's responsibility to pay the "covered claims" of insolvent insurers.

> 3. *Although the First Amended Complaint Is Factually Deficient, the Bergers and the Kayles Are Entitled to Leave to Amend to Assert a Cause of Action Pursuant to Insurance Code Section 1063 et Seq.*

The trial court sustained CIGA's demurrer to the first amended complaint on the ground the Bergers and the Kayles could not rely on section 340.9 to demonstrate the timeliness of their claims for policy benefits.[14] This was error. Nevertheless, as it stands the first amended complaint is wholly deficient in its allegations that the Bergers and the Kayles have a claim for benefits that has been revived by section 340.9 and that CIGA has not fulfilled its responsibilities under Insurance Code section 1063 et seq.

---

[14] The trial court granted the Bergers and the Kayles leave to amend to show their claim was otherwise timely under principles of equitable tolling.

 With respect to section 340.9, the Bergers and the Kayles do not allege their claims satisfy the statute's requirements for revival. Although the Bergers and the Kayles state in their opening brief that they "contacted Reliance between January 17, 1994 and January 1, 2000" and "contacted representatives of the insurer before January 1, 2000," no similar allegations appear in the first amended complaint. Instead, they simply allege, "Plaintiffs gave timely and adequate notice of claim." This allegation states only a legal conclusion, rather than pleading facts, and, as such, is inadequate. (*Kenneth Mebane Ranches v. Superior Court* (1992) 10 Cal.App.4th 276, 291 [12 Cal.Rptr.2d 562] ["allegations constituting legal conclusions are not provisionally admitted for the purposes of a demurrer"]; see Code Civ. Proc., § 430.10, subd. (e); Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2004) ¶ 6:127, p. 6-26 ["[f]ailure to plead ultimate facts subjects the complaint to *demurrer* for 'failure to state facts constituting the *cause of action*' "].) Nor does the first amended complaint make any allegations with respect to the administration of the claims by Reliance to demonstrate the claims asserted are covered by the insurance policies and to satisfy all the requirements of Insurance Code section 1063.1, subdivision (c)(1).[15]

 The first amended complaint also fails to demonstrate the Bergers' and the Kayles' claims against CIGA are ripe. They do not specifically allege they filed claims in the insolvency proceedings against Reliance but merely state they "have and/or will be submitting . . . claim[s] [in the insolvency proceedings] on or before December 31, 2003." In addition, they do not allege CIGA has denied their claims but merely assert that CIGA will refuse or has refused to act on them. The Bergers and the Kayles, therefore, cannot pursue their cause of action against CIGA for violation of Insurance Code section 1063 et seq. based on the first amended complaint. (*Breneric Associates v. City of Del Mar* (1998) 69 Cal.App.4th 166, 188 [81 Cal.Rptr.2d 324] ["demurrer may be sustained when the complaint shows on its face the claim is not ripe for adjudication"].)

 Although generally a party who has declined to take advantage of leave to amend must stand on his or her pleading (see *Rader v. Apple Valley Bldg. & Dev. Co.* (1968) 261 Cal.App.2d 308, 314 [68 Cal.Rptr. 108]; *Hendricks v. Osman* (1946) 72 Cal.App.2d 465, 466–467 [164 P.2d 545]), that principle does not apply here. The trial court granted leave to amend on a limited ground, based on its erroneous ruling that CIGA could face no liability on a claim revived by section 340.9. The Bergers and the Kayles,

---

[15] For example, the first amended complaint does not allege the extent to which the claims were unpaid by Reliance, whether Reliance's assets are insufficient to discharge the claims in full and whether a claim was timely filed in the liquidation proceedings. (See Ins. Code, § 1063.1, subd. (c)(1).)

therefore, are entitled to leave to amend to file a second amended complaint to attempt to remedy the defects in the first amended complaint identified in this opinion by adequately pleading their claims for policy benefits are within the policy's coverage and revived by section 340.9 and CIGA has denied payment on the claims despite their compliance with the claims presentation requirements in the liquidation order against Reliance.

4. *No Basis Exists for Assertion of a Cause of Action Under Business and Professions Code Section 17200*

In one short paragraph in their opening brief, the Bergers and Kayles contend in conclusory fashion that the first amended complaint states a cause of action for unfair business practices under Business and Professions Code section 17200.[16] However, they fail to make a coherent argument or cite any authority to support their contention, nor do they specify any facts they maintain would state a cause of action for violation of Business and Professions Code section 17200. Their failure to do so constitutes a waiver of the issue on appeal.[17] (*Interinsurance Exchange v. Collins* (1994) 30 Cal.App.4th 1445, 1448 [37 Cal.Rptr.2d 126] ["[P]arties are required to include argument and citation to authority in their briefs, and the absence of these necessary elements allows this court to treat appellant[s'] [contentions] as waived"]; *Dills v. Redwoods Associates, Ltd.* (1994) 28 Cal.App.4th 888, 890, fn. 1 [33 Cal.Rptr.2d 838] [appellate court "will not develop the appellants' arguments for them"]; Cal. Rules of Court, rule 14(a)(1)(B) [each point in a brief must be supported by "argument and, if possible, by citation of authority"]; see also Eisenberg et al., Cal. Practice Guide: Civil Appeal and Writs (The Rutter Group 2004) ¶ 9:21, p. 9-6 ["appellate court can treat as *waived* any issue which, although raised in the briefs, is *not supported by pertinent or cognizable legal argument or proper citation of authority*"].)

---

[16] Indeed, neither the original complaint nor the first amended complaint specifically alleges a cause of action for violation of Business and Professions Code section 17200; and the issue of a cause of action for unfair business practices was not raised or ruled upon in the demurrer proceedings before the trial court.

[17] We, therefore, need not address the November 2004 amendments to the requirements for standing to sue under the unfair competition law limiting private party standing under Business and Professions Code section 17204 to "persons" who have suffered actual injury (see Prop. 64, § 3 added by initiative, Gen. Elec. (Nov. 2, 2004) eff. Nov. 3, 2004), or determine whether those amendments are retroactive. We also need not decide, although we have serious doubts, whether CIGA could be liable for unfair business practices under Business and Professions Code section 17200 in any event based on its status as an " 'involuntary, unincorporated association of insurers admitted to transact business in California' " whose responsibilities are limited to the payment of "covered claims" within the meaning of the Guarantee Act. (*Isaacson, supra,* 44 Cal.3d at p. 786.)

## DISPOSITION

The order of dismissal is reversed; and the matter is remanded with directions for the trial court to enter an order sustaining CIGA's demurrer to the first amended complaint and granting the Bergers and the Kayles leave to amend to state a cause of action for violation of Insurance Code section 1063 et seq. consistent with the views expressed in this opinion. The parties are to bear their own costs on appeal.

Johnson, J., and Woods, J., concurred.

A petition for a rehearing was denied May 23, 2005, and the opinion was modified to read as printed above.